COMMONWEALTH of Pennsylvania,
Appellant

v.

Cheryl M. RAYBUCK, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 20, 2006.
Filed Dec. 22, 2006.

Ross W. McKiernan, Asst. Dist. Atty., Warren, for Com., appellant.

John R. Parroccini, Warren, for appellee.

BEFORE: STEVENS, TODD, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.

¶ 1 The Commonwealth appeals from the trial court order denying its motion for reconsideration of the sentence imposed on Appellee, Cheryl M. Raybuck, following her conviction for two counts of aggravated assault. Specifically, the Commonwealth asks us to determine whether the trial court erred by not applying the deadly weapons enhancement[1] to Appellee's sentence based on Appellee's use of commercial mouse poison and household chemicals to commit her offenses. We conclude that commercial mouse poison is a deadly weapon for purposes of the enhancement rule in this case; however, we further conclude that unidentified household chemicals cannot be considered a deadly weapon. Therefore, we affirm in part and reverse in part.

¶ 2 The facts and procedural history underlying this matter are as follows. Appellee was charged with two counts of aggravated assault and other offenses in connection with the attempted poisoning of her husband.[2] With regard to the first

1. 204 Pa.Code § 303.10(a)(1)(iii).

2. Aggravated assault is defined, in relevant part, as follows:

A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. 2702(a)(1). Appellee was also charged with attempted murder and recklessly endangering another person, but these charges were *nolle prossed*.

count of aggravated assault, she pled guilty to attempting to cause serious bodily injury to her husband by placing mouse poison, which is commercially available for rodent control, onto and into the food she prepared and gave him to eat. With regard to the second count, Appellee pled *nolo contendere* to attempting to cause serious bodily injury to her husband by pouring household chemicals into a bathtub drain in an attempt to manufacture a toxic gas. The court sentenced Appellee to consecutive terms of imprisonment of 30 to 60 months on the first aggravated assault count and 22 to 44 months on the second count, for a total sentence of 52 to 104 months.

¶ 3 The Commonwealth then filed a timely motion for reconsideration of sentence based on the trial court's failure to apply the deadly weapons enhancement, as provided under 204 Pa.Code § 303.10(a)(1)(iii). After the trial court denied the motion for reconsideration, the Commonwealth filed a timely appeal and raises the following single issue for our review:

> Is the Trial Court mandated to apply the deadly weapons enhancement set forth in the sentencing code on a plea of guilty to two counts of aggravated assault where poison and toxic gas were the instrumentalit[ies] used in the commission of the crime[?]

(Commonwealth's Statement of Question Involved).

■■■ ¶ 4 An allegation that the trial court erred by not applying the deadly weapons enhancement is a challenge to the discretionary aspects of sentence, from which there is no appeal as of right. *See, e.g., Commonwealth v. Pennington*, 751

A.2d 212, 215 (Pa.Super.2000); *Commonwealth v. Scullin*, 414 Pa.Super. 442, 607 A.2d 750, 751–51 (1992). To be reviewed on the merits, a challenge to the discretionary aspects of sentence must raise a substantial question that the sentence imposed is not appropriate. *Pennington, supra* at 215 (citing 42 Pa.C.S.A. § 9781(b)). A substantial question is raised when the appellant advances a "colorable argument" that the sentence was either "inconsistent with a specific provision of the Sentencing Code" or "contrary to the fundamental norms which underlie the sentencing process." *Id.* at 215–16.

■■ ¶ 5 Our case law has established that application of the deadly weapons enhancement presents a substantial question. *See id.* at 216 (concluding that the appellant raised a substantial question by challenging the trial court's application of the deadly weapons enhancement, based on the appellant's assertion that he had not had actual possession of the deadly weapon, a gun); *Commonwealth v. Hatcher*, 746 A.2d 1142, 1144 (Pa.Super.2000) (same); *Commonwealth v. Magnum*, 439 Pa.Super.616, 654 A.2d 1146, 1149–50 (1995) (concluding that the Commonwealth raised a substantial question by challenging the trial court's failure to consider a deadly weapons enhancement in a situation where the appellant used a knife to threaten the victims); *Scullin, supra* at 752–53 (concluding that the Commonwealth raised a substantial question by challenging the trial court's determination that a tire iron thrown by the appellee was not a deadly weapon). Therefore, because the Commonwealth has raised a substantial question, we will address the merits of the claim.[3]

---

**3.** The Commonwealth has not included a statement of the reasons relied upon for allowance of appeal, as required by Pa.R.A.P.

2119(f). However, because Appellee has failed to object to this omission and a substantial question is obvious from the Common-

¶ 6 When reviewing a challenge to the discretionary aspects of sentencing, we adhere to the following standard:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin,* 892 A.2d 843, 847 (Pa.Super.2006).

¶ 7 The deadly weapons enhancement provision of the sentencing guidelines provides, in relevant part, as follows:

When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa. C.S. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the defendant intended to use the weapon to threaten or injure another individual.

204 Pa.Code § 303.10(a)(1)(iii).

¶ 8 In considering the applicability of the deadly weapon enhancement in a particular case, we look for guidance to our case law. Not surprisingly, guns, knives, and other clearly offensive weapons constitute the most obvious and commonly encountered forms of deadly weapons. *See Pennington,* 751 A.2d at 215–17; *Magnum,* 654 A.2d at 1149–50; *Commonwealth v. Burns,* 390 Pa.Super. 426, 568 A.2d 974, 976 (1990). However, other items, not normally considered to be weapons, have also been categorized as deadly weapons under certain circumstances. For example, in *Scullin,* 607 A.2d at 753, this Court held that a tire iron was a deadly weapon under the circumstances of its use by the offender, who had thrown a tire iron at the victim, thereby causing his death. The Court acknowledged that a tire iron was not a traditional weapon, but nonetheless considered it a deadly weapon in that case because it had been used in such a manner as to create a high probability of serious bodily injury or death. *Id.* As stated by the Court, the tire iron "became a deadly weapon at the moment [the defendant] threw it in the direction of the ultimate victim." *Id.*

¶ 9 Similarly, this Court has held that a fireplace poker and a dry-wall saw were deadly weapons under certain circumstances. *Commonwealth v. Cornish,* 403 Pa.Super. 492, 589 A.2d 718, 721 (1991); *Commonwealth v. Brown,* 402 Pa.Super. 369, 587 A.2d 6, 7 (1991). In *Cornish,* the fireplace poker had been used to strike the victim numerous times during the course

wealth's brief, we will address the merits of the issue presented. *See Commonwealth v. Saranchak,* 544 Pa. 158, n. 18, 675 A.2d 268, 277 n. 18 (1996) (stating that an appellate court may overlook an appellant's failure to include a Rule 2119(f) statement when the appellee fails to object to the omission and a substantial question is evident from the appellant's brief).

of a robbery, and in *Brown,* the saw had been used to stab the victim ten times. From the holdings of *Scullin, Cornish,* and *Brown,* it is clear that an object can attain deadly weapon status based on its use under the circumstances of the particular crime.

■ ¶ 10 The sentencing court has no discretion to refuse to apply the deadly weapons enhancement when it is appropriate. *Magnum,* 654 A.2d at 1149–50; *Scullin* 607 A.2d at 753. The court must begin its calculation of a sentence from the correct starting range, including, when appropriate, the deadly weapons enhancement. *Magnum, supra* at 1150; *Scullin, supra* at 754. When a sentencing court fails to begin its calculation of sentence from the correct starting point, this Court will vacate the sentence and remand for reconsideration of sentence. *Magnum, supra* at 1150; *Scullin, supra* at 754.

■ ¶ 11 We turn now to the facts and circumstances of the case *sub judice,* addressing first whether commercial mouse poison as used by Appellee is a deadly weapon. For mouse poison to be classified as a deadly weapon, it must be an "instrumentality . . . capable of producing death or serious bodily injury where the court determines that the defendant intended to use the weapon to threaten or injure another individual." 204 Pa.Code § 303.10(a)(1)(iii). We conclude that mouse poison, as used by Appellee herein, is encompassed by this provision.

¶ 12 Mouse poison is clearly an instrumentality, the broad definition of which is a "thing used to achieve an end or purpose." Black's Law Dictionary, 8th ed., 2004. Mouse poison is used to kill rodents. Instantly, it became a deadly weapon when Appellee included it in the sandwich that she prepared for her husband to consume, in light of her admitted intent to poison him. *See Scullin,* 607 A.2d at 753 (holding

that the tire iron "became a deadly weapon at the moment [the defendant] threw it in the direction of the ultimate victim.")

¶ 13 That the amount of poison Appellee added to the sandwich was apparently insufficient to actually cause serious bodily injury is irrelevant to our conclusion that mouse poison is a deadly weapon under the circumstances of this case. By design and normal usage, mouse poison kills rodents, and thus by its very nature it is toxic and dangerous. Appellee attempted to exploit this characteristic in order to poison her husband. It is not necessary for the court to venture into calculations of the amount of mouse poison that the victim would have had to ingest to produce the injurious effect intended by Appellee in order for the deadly weapons enhancement to apply. We base this conclusion upon our interpretation of the entire text of 204 Pa.Code § 303.10(a), which provides in subsection (i) that a firearm is classified as a deadly weapon, *whether loaded or unloaded.* 204 Pa.Code § 303.10(a)(i) (emphasis added). By analogy, we conclude that commercial mouse poison is a deadly weapon under subsection (iii), whether or not it is used in an amount actually capable of causing serious bodily injury or death.

■ ¶ 14 Finally, we turn to the question of whether unidentified household chemicals can be considered a deadly weapon. The second charge of aggravated assault, to which Appellee pled *nolo contendere,* stemmed from her attempt to manufacture a poisonous gas by pouring household chemicals down the bathtub drain. However, not a scintilla of evidence was offered as to the identity or nature of the chemicals Appellee used. "Household chemicals" comprises a large, broad, and diverse category with little or no commonality except for the common presence and usage of these products in the home. In

the absence of *any* information regarding the nature of the specific chemicals used by Appellee, we conclude that the trial court did not err in declining to apply the deadly weapons enhancement when calculating Appellee's sentence on this charge of aggravated assault.

¶ 15 In summary, we conclude that the trial court erred as a matter of law by not including the deadly weapons enhancement when calculating Appellee's sentence for aggravated assault involving the use of mouse poison. However, we affirm the trial court's refusal to consider unknown household chemicals as a deadly weapon. Thus, we affirm in part and reverse in part and remand for reconsideration of sentence.

¶ 16 Sentence affirmed in part, reversed in part, and remanded for resentencing. Jurisdiction relinquished.