J-A09016-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| RAHMIR VENABLE, | : | |
| | : | |
| Appellant | : | No. 1069 EDA 2014 |

Appeal from the Judgment of Sentence November 19, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0002534-2013

BEFORE:  BOWES, DONOHUE and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:  **FILED MAY 05, 2015**

Appellant, Rahmir Venable ("Venable"), appeals from the judgment of sentence entered on November 19, 2013 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his guilty plea to aggravated assault,[1] robbery,[2] criminal conspiracy,[3] use or possession of electric or electronic incapacitation device,[4] and use or possession of an offensive weapon.[5]  For the reasons that follow, we affirm in part and vacate in part, Venable's judgment of sentence.

---

[1]  18 Pa.C.S.A. § 2702(a).

[2]  18 Pa.C.S.A. § 3701(a)(1)(i).

[3]  18 Pa.C.S.A. § 903(c).

[4]  18 Pa.C.S.A. § 908.1(a)(1).

[5]  18 Pa.C.S.A. § 908(a).

This case stems from a heinous attack on Dr. Allison Walsh ("Dr. Walsh") in which Venable took part. The relevant facts that the Commonwealth would have proven had this case gone to trial and to which Venable pled guilty are as follows:

> [O]n the morning of August 25th, 2012, at approximately 5:45 in the morning[,] which was day break[,] the complainant, [Dr. Walsh], was walking to work at Jefferson Hospital. When she got to about the area of 11th and Lombard Streets in the city and county of Philadelphia, five males were walking towards her. One looked at her and said, [g]ood morning. She said good morning back as she looked at him. He then -- that would be the codefendant, Marquise Bullock [("Bullock")], grabbed her purse, put a taser to her neck and shocked her.
>
> At that point[,] she yelled for him to get off of her. She struggled with him. He yelled, [g]et her. Another codefendant, Sulan Jones [("Jones")], grabbed her by the arm. Bullock then tries to tase her again. She is able to break away but she runs into [Jones]. Jones starts hitting her, punching her with his fists on her right side. [Bullock] grabs her arm, tases her again. She's also kicked in her knee and pushed to the ground.
>
> At that point[,] while the males were walking towards her, they slightly walk past her. These two males were slightly ahead with another codefendant, Anthony McKim. They come back and at that point they come back and Dr. Walsh is on the ground face up as all five of them punch and kick her repeatedly about her body. She's punched in the side of her head. She's kicked all over her body. She's kicked in her face which results in her having a broken nose. She's [tased] at least four times. First time being on her neck. She's tased on her inner arm. She's tased on the palm of her hand. She's tased on her forehead.

They continuously try to get her purse from her. While she struggles with them, they drag her on the ground[,] pulling at her purse. Your Honor, to this day she still has two scars, bad scars on her back from being dragged on the ground. They do eventually get her purse away from her and they all run off together going northbound, I believe, on 11th street.

Taken in her bag was her wallet with her identification, credit cards and debit cards, her physician's license, $250 VISA gift card, her pagers for Jefferson Hospital, her medications, her iPhone and $40 of United States currency.

\* \* \*

[Dr. Walsh's] brother-in-law tried to track her iPhone using an app. At that point[,] her iPhone was originally labeled Allison's iPhone. It came up as Lamar's iPhone. Then[,] through her Facebook account, all of her friends were notified that an Instagram account had been opened linked to her Facebook. That name was under the name Rahh_Bangga … . A picture of [Venable] popped up with the account.

[Dr. Walsh] alerted the detectives. A picture -- a screen shot of her phone was taken at that time and [Venable] was put into a photo array. Dr. Walsh identified him as one of the males that robbed her on August 25th. She had stated that he kicked me while I was on the ground. He was pulling on my bag and kicking me.

\* \* \*

[Dr. Walsh] did have a broken nose as I said as a result of the incident. She did have to have surgery. She has been -- the past year have been treated for post[-]traumatic stress syndrome as a result of this incident and she still suffers scars as a result.

N.T., 10/7/13, at 10-14, 16.

On September 14, 2012, police arrested Venable. On October 7, 2013, Venable pled guilty to the above-referenced crimes. On November 19, 2013, the trial court sentenced Venable to five to ten years of incarceration plus ten years of probation for each of the aggravated assault, robbery, and use or possession of electric or electronic incapacitation device charges, two to four years of incarceration plus six years of probation on the criminal conspiracy charge, and no further penalty on the use or possession of an offensive weapon charge. The trial court ordered these sentences to run concurrently to one another for an aggregate period of five to ten years of incarceration plus ten years of probation. The trial court further ordered Venable to undergo random urinalysis, complete job and anger management training, seek and maintain employment, and pay $2500 in restitution, plus court costs and fees.

On November 27, 2013, Venable filed a timely post-sentence motion challenging his sentence, which was denied by operation of law on March 28, 2014. On April 1, 2014, Venable filed a timely notice of appeal. On June 5, 2014, the trial court ordered Venable to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On June 26, 2014, Venable filed his timely Rule 1925(b) statement.

On appeal, Venable raises the following issues for our review and determination:

1. Did not the sentencing court err in finding that [Dr. Walsh] suffered serious bodily injury for the purpose of applying elevated sentencing guidelines for the offenses of Robbery and Aggravated Assault in imposing its sentence where [Dr. Walsh]'s injuries did not result in permanent impairment, disfigurement, or substantial risk of her death?

2. Did not the sentencing court err in relying upon the deadly weapon used sentencing enhancement in imposing sentence because a Taser not a deadly weapon as considered by the [g]uidelines and furthermore when [Venable] never possessed the weapon?

3. Was not the sentence imposed manifestly excessive, unreasonable, and an abuse of discretion because the sentencing court failed to consider the Sentencing Code, failed to place the reasons for its sentence on the record in open court, failed to consider the needs of [Venable] and whether the sentence was the least restrictive necessary to protect the community and rehabilitate [Venable]?

Venable's Brief at 3.

Each of the issues that Venable raises on appeal challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (en banc), *appeal denied*, 104 A.3d 1 (Pa. 2014). "An appellant must satisfy a four-part test to invoke this Court's

jurisdiction when challenging the discretionary aspects of a sentence." ***Id.*** We conduct this four-part test to determine whether,

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post[-]sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted), *appeal denied,* 86 A.3d 231 (Pa. 2014). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (quotations and citations omitted), *appeal denied*, 91 A.3d 161 (Pa. 2014).

Here, Venable preserved his discretionary aspects of sentencing claims by raising them in a post-sentence motion. ***See*** Post-Sentence Motion, 11/27/13, at 1-8. Venable also filed a timely notice of appeal. Furthermore, Venable set forth a concise statement of the reasons relied upon for the allowance of his appeal pursuant to Rule 2119(f) of the Pennsylvania Rules of Appellate Procedure. ***See*** Venable's Brief at 4-6.

Thus, we must determine whether Venable's discretionary aspects of sentencing claims raise substantial questions for our review. We begin with

the first two issues Venable raises on appeal, as they are dispositive of the entire case. First, Venable claims that the trial court misapplied the Sentencing Guidelines by sentencing him in accordance with the finding that Dr. Walsh suffered serious bodily injury. *Id.* at 10-13. A claim that the trial court misapplied the Sentencing Guidelines raises a substantial question for our review. *Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007). Second, Venable contends that the trial court abused its discretion when it applied the deadly weapon enhancement to his sentences for his aggravated assault and robbery convictions. Venable's Brief at 13-15. This Court has "found on several occasions that the application of the deadly weapon enhancement presents a substantial question." *Commonwealth v. Rhoades*, 8 A.3d 912, 916 (Pa. Super. 2010). Because Venable has complied with the technical requirements for consideration of a challenge to the discretionary aspects of a sentence for his first two issues, we will consider these claims on their merits.

Our standard of review when considering discretionary aspects of sentencing claims is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge. *Commonwealth v. Paul*, 925 A.2d 825 (Pa. Super. 2007). The standard employed when reviewing the discretionary aspects of sentencing is very narrow. [*Commonwealth v. Marts*, 889 A.2d 608, 613 (Pa. Super. 2005)]. We may reverse only if the sentencing court abused its discretion or committed an error of law. *Id.* "A sentence will not be disturbed on appeal absent a

> manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Littlehales*, 915 A.2d 662, 665 (Pa. Super. 2007). We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime. *Marts*, 889 A.2d at 613.

*Cook*, 941 A.2d at 11-12.

For his first issue, Venable claims that the trial court erred in applying the sentencing guidelines by sentencing him in accordance with the trial court's determination that Dr. Walsh suffered serious bodily injury. Venable's Brief at 10-13. Venable argues that the injuries Dr. Walsh suffered in this case were insufficient to support a finding that she sustained serious bodily injury. *Id.*

We conclude that the trial court did not abuse its discretion by sentencing Venable in accordance with the finding that Dr. Walsh suffered serious bodily injury. The certified record on appeal indicates that Venable pled guilty to a crime that contained the element of serious bodily injury. Specifically, the record reflects that in pleading guilty to robbery, Venable pled guilty to section 3701(a)(1)(i) of the Crimes Code. *See* Docket, 7/2/14, at 5; Trial Disposition and Dismissal Form, 10/7/13, at 2. Section

3701(a)(1)(i) reads as follows: "A person is guilty of robbery if, in the course of committing a theft, he … inflicts serious bodily injury upon another." 18 Pa.C.S.A. § 3701(a)(1)(i). Because Venable pled guilty to inflicting serious bodily injury upon Dr. Walsh in the course of committing a theft, the trial court did not abuse its discretion in sentencing him accordingly.

For his second issue, Venable claims that the trial court abused its discretion when it applied the deadly weapon enhancement to his sentences for aggravated assault and robbery. Venable's Brief at 13-15. First, Venable argues that a taser is not a deadly weapon. *Id.* at 13-14. Second, Venable contends that the trial court should not have applied the deadly weapon enhancement to his aggravated assault and robbery sentences because he never used the taser on Dr. Walsh or otherwise possessed it during the attack. *Id.* at 14-15. This issue requires us to decide whether the taser here constituted a deadly weapon. We have found no published opinions discussing a taser within the context of the deadly weapon sentencing enhancement.

A taser is a non-lethal electronic incapacitation device. *See* 18 Pa.C.S.A. § 908.1; *Commonwealth v. Landis*, 48 A.3d 432, 439 (Pa. Super. 2012) (en banc). An electronic incapacitation device is "a portable device which is designed or intended by the manufacturer to be used, offensively or defensively, to temporarily immobilize or incapacitate persons

- 9 -

by means of electric pulse or current." 18 Pa.C.S.A. § 908.1(f); *see also*

***Ickes v. Borough of Bedford***, 807 F. Supp. 2d 306, 321-22 (W.D. Pa.

2011) (classifying a taser as an intermediate or medium quantum of force

that causes an individual to lose control of his or her muscles and does not

ordinarily cause death or serious bodily injury).

The trial court sentenced Venable according to the deadly weapon

**used** matrix of the Sentencing Guidelines. *See* 204 Pa. Code § 303.17(b);

N.T., 11/19/13, at 49. To determine whether the deadly weapon used

matrix should apply, the Sentencing Code provides, in pertinent part, as

follows:

> (2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
>> (i) Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
>>
>> (ii) Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or
>>
>> (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10(a)(2).

For our purposes, a taser is not a firearm as defined by 42 Pa.C.S.A. § 9712,[6] nor is it one of the dangerous weapons defined in 18 Pa.C.S.A. § 913.[7]  **See** 204 Pa. Code § 303.10(a)(2)(i), (ii).  Therefore, our analysis will focus on determining the meaning and scope of the terms set forth in section 303.10(a)(2)(iii).  Under section 303.10(a)(2)(iii), a deadly weapon is (1) "[a]ny device, implement, or instrumentality"; (2) that is "employed by the offender in a way that threatened or injured another individual"; and (3) is "capable of producing death or serious bodily injury."  204 Pa. Code § 303.10(a)(2)(iii)

Applying section 303.10(a)(2)(iii), an en banc panel of this Court explained:

---

[6]  A firearm is "[a]ny weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein."  42 Pa.C.S.A. § 9712(e).  The trial court did not find and the Commonwealth does not contend that a taser falls within the definition of a firearm.

[7]  Section 913 defines dangerous weapons as:

> A bomb, any explosive or incendiary device or material when possessed with intent to use or to provide such material to commit any offense, graded as a misdemeanor of the third degree or higher, grenade, blackjack, sandbag, metal knuckles, dagger, knife (the blade of which is exposed in an automatic way by switch, push-button, spring mechanism or otherwise) or other implement for the infliction of serious bodily injury which serves no common lawful purpose.

18 Pa.C.S.A. § 913(f).

The Sentencing Guidelines do not define the terms "device, implement, or instrumentality." Only one of those terms, "instrumentality," has been defined by our Court for purposes of the DWE. Our Court, quoting Black's Law Dictionary, determined an instrumentality is a "thing used to achieve an end or purpose." ***Commonwealth v. Raybuck***, 915 A.2d 125, 129 (Pa. Super. 2006) (quoting Black's Law Dictionary (8th ed. 2004)).

Without statutory or decisional authority defining the terms defining the terms "device" or "implement," we thus turn to the dictionary meanings of these words.

Merriam-Webster defines a "device" as "an object, machine, or piece of equipment that has been made for some special purpose." Merriam-Webster, http://www.merriam-webster.com/dictionary/device (last visited March 4, 2014). "Implement" is defined as "an object used to do work." Merriam-Webster, http://www.merriam-webster.com/dictionary/implement (last visited March 4, 2014). These two definitions appear to limit the scope of a deadly weapon as something specifically designed to achieve an end result, which in this case is to cause death or serious bodily injury. However, the Sentencing Commission's use of the word "capable" in the qualifying phrase "capable of producing death or serious bodily injury" expands the scope of such an interpretation.

"Capable" is defined as "able to do something[,] having the qualities or abilities that are needed to do something." Merriam-Webster, http://www.merriam-webster.com/dictionary/capable (last visited March 4, 2014). Utilization of this word promotes the idea that the device, implement, or instrumentality need not originally be designed to produce death or serious bodily injury. Instead, it may be utilized in a different manner to achieve a more nefarious result. From a review of these definitions, we discern that collectively, a "device, implement, or

instrumentality" is an object, whether simple or complex, that is *utilized* in a fashion to produce death or serious bodily injury, which need not be consistent with the original purpose of the object.

Our case law supports such an interpretation by stating that, for purposes of the DWE, "[i]tems not normally classified as deadly weapons can become so based upon their use under particular circumstances." **Commonwealth v. Rhoades**, 8 A.3d 912, 917 (Pa. Super. 2010) (intact glass bottle qualified as a deadly weapon). We found many examples in our cases: [**Raybuck**], 915 A.2d 125 [] (commercial mouse poison is an "instrumentality" for purposes of the DWE); **Commonwealth v. Scullin**, [] 607 A.2d 750 ([Pa. Super.] 1992) (tire iron thrown at victim was a deadly weapon); **Commonwealth v. Cornish**, [] 589 A.2d 718, 721 ([Pa. Super.] 1991) (fireplace poker used to strike victim constitutes a deadly weapon); **Commonwealth v. Brown**, [] 587 A.2d 6, 7 ([Pa. Super.] 1991) (saw used to stab victim was a deadly weapon); **Commonwealth v. Chapman**, [] 528 A.2d 990 ([Pa. Super.] 1987) (straightedge razor placed at the face of an individual is a deadly weapon).

**Buterbaugh**, 91 A.3d at 1286-69 (emphasis in original).

Additionally, in deciding cases under section 303.10(a)(2), this Court has applied the definition of serious bodily injury from section 2301 of the Crimes Code. **See Rhoades**, 8 A.3d at 917 (citing 18 Pa.C.S.A. § 2301). Section 2301 defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

organ." 18 Pa.C.S.A. § 2301. With this framework in mind, we turn our attention to the facts of this case.

Here, the certified record on appeal reveals the following regarding the use of the taser. The assailants tased Dr. Walsh at least twice prior to her falling to the ground. N.T., 10/7/13, at 11. The assailants continued to tase Dr. Walsh after she fell to the ground. *Id.* In total, the assailants tased Dr. Walsh at least four times – on her neck, on her forehead, on her inner arm, and on her hand. *Id.* at 11-12. We now apply these facts to the three-part framework set forth above.

First, a taser undoubtedly constitutes a device. A taser is a machine, or piece of equipment, made for some special purpose, namely, the temporary immobilization or incapacitation of persons. *See* 18 Pa.C.S.A. § 908.1(f); *Buterbaugh*, 91 A.3d 1247 at 1268. Second, there is no doubt that the assailants employed the taser here in a way that threatened Dr. Walsh. *See* N.T., 10/7/13, at 11-12.

Therefore, the sole question that remains is whether the taser, as the assailants used it in this case, was "capable of producing death or serious bodily injury." *See* 204 Pa. Code § 303.10(a)(2)(iii). In *Buterbaugh*, our Court defined "capable" as "able to do something" or "having the qualities or abilities that are needed to do something," namely, causing death or serious bodily injury. *Buterbaugh*, 91 A.3d at 1269. Under the *Buterbaugh*

definition of "capable," a device, implement, or instrumentality, can become a deadly weapon based on its use under the circumstances. *Id.*

A prior case from this Court has held that a device, implement, or instrumentality was capable of producing death or serious bodily because it was designed to kill. In *Raybuck*, this Court held that mouse poison was a deadly weapon when used on a person, no matter how much poison was used, because it was by its very nature, toxic, dangerous and designed to kill. *Raybuck*, 915 A.2d at 129. In other cases, this Court has held that certain devices, implements, and instrumentalities, though not designed to kill, were capable of producing death or serious bodily injury. *See Buterbaugh*, 91 A.3d at 1269 (automobile); *Rhoades*, 8 A.3d at 917 (intact glass bottle); *Scullin*, 607 A.2d at 753 (tire iron); *Cornish*, 589 A.2d at 721 (fireplace poker); *Brown*, 587 A.2d at 7 (saw). The evidence to support those findings was readily apparent in those cases. In each of those cases, the victims therein actually suffered death or serious bodily as a direct consequence of the manner in which those devices, implements, and instrumentalities were used. *See id.* For example, in *Buterbaugh*, this Court held that an automobile was a deadly weapon where the appellant intentionally struck and killed the victim while driving at the maximum rate of acceleration. *Buterbaugh*, 91 A.3d at 1268-69.

In contrast, a taser does not fit within either of these two categories of cases. Unlike the poison in *Raybuck*, a taser is not designed to kill. As

- 15 -

mentioned above, a taser does not ordinarily cause death or serious bodily injury. A taser, rather, temporarily immobilizes or incapacitates persons by means of an electric pulse or current. *See* 18 Pa.C.S.A. § 908.1(f). Thus, a taser is designed to be a non-lethal device that uses an electric current to incapacitate persons. *See* 18 Pa.C.S.A. § 908.1(f); *Landis*, 48 A.3d at 439. Additionally, unlike *Buterbaugh*, *Rhoades*, *Scullin*, *Cornish*, and *Brown*, there is no evidence here that Dr. Walsh died or suffered serious bodily injury specifically from the taser, as the assailants employed it in this case. *See* N.T., 10/7/13, at 10-16. Indeed, the facts to which Venable pled guilty do not even indicate that Dr. Walsh suffered any injury due to the tasing.[8] *See id.*

Moreover, there is no independent proof in the certified record on appeal regarding a taser's capability to produce death or serious bodily injury as used here. There is no evidence of record that repeated shocks from a taser are capable of producing death or serious bodily injury. The record does not reflect what voltage the taser used in this case emitted. The record likewise does not reflect whether that voltage, if inflicted repeatedly,

---

[8] The trial court contends that Dr. Walsh experienced tachycardia and burn marks following the tasing. Trial Court Opinion, 6/30/14, at 7. Tachycardia refers to an abnormally rapid heart rate, greater than 100 beats per minute. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 2137 (20th ed. 2005). However, the Commonwealth did not reference these injuries in the facts to which Venable pled guilty. *See* N.T., 10/7/13, at 10-14, 16. Moreover, there is no evidence of record that ties Dr. Walsh's elevated heart rate following the attack to the tasing. *See id.*

is likely to create a substantial risk of death or cause serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. The record further does not reflect whether a taser, if used upon the head, neck, arm, or hand, as it was in this case, is capable of causing death or serious bodily injury. While not required, the Commonwealth introduced no expert testimony or other evidence indicating the level of injury caused by repeated tasing.

Therefore, there is no evidence, given the limited record before us, to support the trial court's decision to apply the deadly weapon enhancement in this case because there is no evidence of record indicating that the assailants' use of the taser in this case was capable of producing death or serious bodily injury. Accordingly, we must conclude, in the absence of any evidence of whether a taser is capable of producing death or serious bodily injury, that the trial court abused its discretion in applying the deadly weapon enhancement to Venable's aggravated assault and robbery convictions.

Because we conclude that a taser was not a deadly weapon under the facts and circumstances of this case, and that the trial court erred in applying the deadly weapon enhancement to Venable's aggravated assault and robbery convictions, we must remand this case to the trial court for re-sentencing. Accordingly, we need not consider the remaining argument of Venable's second issue or the entirety of his third issue.

Judgment of sentence affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2015