J-S49021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| SHAMAR DARIUS ALEXANDER, | | |
| Appellant | | No. 395 EDA 2015 |

Appeal from the Judgment of Sentence of January 5, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0003299-2012

BEFORE: PANELLA and OLSON, JJ. and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 13, 2016**

Appellant, Shamar Darius Alexander, appeals from the judgment of sentence entered on January 5, 2015, following his jury trial convictions for first-degree murder, abuse of corpse, and possessing an instrument of crime.[1] Upon review, we affirm.

The trial court summarized the facts of this case as follows:

> On June 23, 2011, a Chester City police officer on routine patrol found the body of a deceased man, later identified as John Tony Dillard, wrapped in plastic trash bags in the back seat of a taxi in a lot in the 1100 block of Lamokin Street. An autopsy later revealed the presence of the plastic tip and spring of a Papermate pen through the left jugular vein of the deceased's throat. His body also had evidence of strangulation as well as multiple blunt force injuries, mostly to the face. The medical examiner later testified that the

---

[1]  18 Pa.C.S.A. §§ 2502(a), 5510, and 907, respectively.

*Former Justice specially assigned to the Superior Court.

manner of death was homicide, and the cause of death was a stab wound to the neck and strangulation contributed to by multiple blunt force injuries.

At first, officers could not develop any solid leads or identify any prime suspects. The deceased's fiancé, [Shauna] Jordan, advised them that on the date of his death, she accompanied him to Philadelphia Traffic Court, where he paid off some tickets prior to a scheduled wedding date. She never saw him again.

A month later, two Chester detectives pursued the only lead they had and ventured to the Philadelphia Traffic Court to view surveillance footage of the deceased's final hours. The video showed the deceased, Jordan, and another man walking together in the courthouse. Despite Jordan's misidentification of the second man, the detectives were able, several months later, to identify him as [Appellant], a felon whose DNA profile was known to the Pennsylvania State Police. The officers compared that profile with samples taken from the crime scene [including DNA found inside the pen used in the murder and on tape securing the garbage bags wrapped around the body] and, after confirming a match, obtained an arrest warrant.

On February 23, 2012, Corporal Patrick McFate and Detective Tyler of the Chester Police Department arrested [Appellant] and, after advising him of his right to remain silent and securing his signature on a [waiver of rights] card, interrogated him. [Appellant] made a confession that was tape recorded and later played to the jury. Although he attempted to minimize his involvement in the murder, he admitted to participating with knowledge that his [alleged] accomplice[] intended to murder the victim.

\*　　　　\*　　　　\*

[Appellant] admitted his involvement in a scheme to kill Dillard in exchange for the cancellation of a drug debt owed to an individual known as "Poo." He agreed that since he owed "Poo" money, one way to pay off the debt was to help another man by the name of Terrence Gardner "get rid of" Dillard. In response to [detective] question[ing] about the meaning of "get rid of," [Appellant] explained that it meant

- 2 -

"kill." He attempted to minimize his involvement by asserting that Gardner actually stabbed Dillard in the neck with the pen. However, he admitted that he and Gardner plotted to kill Dillard, that he held Dillard down while Gardner administered blows to Dillard's body and that, after they were certain that Dillard was dead, he wrapped the body with trash bags and tape. At the end of the confession, he apologized to the deceased's family for the fact that he "took a life" and agreed that he should "definitely" suffer the "consequences" of that action.

Trial Court Opinion, 6/3/2015, at 1-3 (record citations omitted).

The Commonwealth charged Appellant with first, second, and third-degree murder and various related offenses. The trial court held a weeklong jury trial in October 2014 following which the jury convicted Appellant of the aforementioned charges. On January 5, 2015, the trial court sentenced Appellant to a mandatory term of life imprisonment without the possibility of parole for first-degree murder, followed by consecutive terms of imprisonment of 30 to 60 months for possessing an instrument of crime and 12 to 24 months of imprisonment for abuse of corpse. This timely appeal followed.[2]

_____

[2] On January 14, 2015, the trial court granted trial counsel's request to withdraw from representation. On January 16, 2015, the trial court appointed new counsel for Appellant. The trial court granted newly appointed counsel's request for an extension of time to file post-sentence motions. While the timely filed post-sentence motions were pending, Appellant filed a *pro se* notice of appeal. The trial court denied the post-sentence motions on February 17, 2015. Counsel did not file a new notice of appeal. However, upon receipt of Appellant's *pro se* notice of appeal, the trial court ordered appointed counsel to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Counsel for Appellant complied timely. Thus, despite the premature, *pro se* filing of the notice of appeal, we conclude the appeal was perfected by counsel's and the

*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review:

I.      Whether the trial court erred in finding sufficient evidence to support the conviction of first[-]degree murder, 18 Pa.C.S.A. § 2502(a), rather than third-degree murder, 18 Pa.C.S.A. § 2502(c)?

Appellant's Brief at 4 (complete capitalization omitted).[3]

Appellant contends he "has never contested that he had some involvement in the [] events leading up to the killing of John Tony Dillard on June 23, 2011." *Id.* at 6.   However, Appellant claims the Commonwealth failed to prove beyond a reasonable doubt that he committed first-degree murder because a review of the evidence shows "Appellant acted in a reckless manner consistent with [t]hird[-d]egree [m]urder." *Id.*   More specifically, and in sum, Appellant maintains:

> In the instant case, there [was] no direct or circumstantial evidence that [] Appellant actually committed the homicide, regardless of the [Commonwealth's] efforts to twist his inconclusive confession into evidence of malice, motive, and the required specific intent.  The trial court opinion states that "malice may be inferred by the use of a deadly weapon by the accused on a vital portion of the victim's body."  The alleged "deadly weapon" was a pen on which there was DNA evidence identifying [] Appellant, the victim, and the DNA of

_(Footnote Continued)_ _____

trial court's subsequent actions.  *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on June 3, 2015.

[3] Appellant "expressly waives consideration of all other issues contained" in his Pa.R.A.P. 1925(b) statement.  Appellant's Brief at 4 n.1.

a third party who was never identified by the police. But this individual was identified by [] Appellant as Terrence Gardner, the person who actually committed this crime. In spite of this identification, the [Commonwealth] chose to believe only those portions of Appellant's statements which allegedly supported a specific intent to kill and not his identification of the real killer. Since the police were not able to find this individual, the trial court found that "the jury could have reasonably concluded that Mr. Gardner was a fictional character and that no other person was present during the commission of the crime." The trial court further found that even if Gardner committed the actual killing, [] Appellant "was guilty as an accomplice."

Simply put, the trial court cannot have it both ways. The trial court in effect dismisses the existence of Terrence Gardner, yet assumes his existence to posit the argument of accomplice liability. The trial court engages in a confusing double standard. The trial court ignores the significance of the DNA evidence on a murder weapon which points to the existence of a perpetrator other than [] Appellant. Yet this same trial court opinion defends the verdict of [f]irst[-d]egree [m]urder under an accomplice liability theory based on the existence of this same perpetrator whom the trial court calls a "fictional character." The person either existed or he did not. Clearly, the only reasonable conclusion is to find that this person did exist and thus there must be at the very least confusion as to whether [] Appellant was the murderer. The DNA of Terrence Gardner itself should have created reasonable doubt as to who actually committed the homicide. The only conclusion which is manifestly obvious beyond a reasonable doubt is that [] Appellant took part in a beating of the victim but may not have had anything to do with the actual murder. This evidence adduced at trial does not compel a conclusion which supports a finding of the recklessness and indifference to human life on the part of [] Appellant consistent with [t]hird[-d]egree [m]urder.

*Id.* at 9-10 (record citations omitted).

- 5 -

"A claim impugning the sufficiency of the evidence presents us with a question of law." ***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (citation omitted). Our standard of review is well-established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.

***Id.*** (citations and quotations omitted).

"A criminal homicide constitutes murder of the first[-]degree when it is committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). The legislature has defined "intentional killing" as a "[k]illing by means of poison,

- 6 -

or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). "In order to prove first-degree murder, the Commonwealth must establish that: (1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill." *Commonwealth v. Poplawski*, 130 A.3d 697, 709 (Pa. 2015) (citation omitted).

"The jury may infer the intent to kill based upon the defendant's use of a deadly weapon on a vital part of the victim's body." *Id.* "[I]tems, not normally considered to be weapons, have [] been categorized as deadly weapons under certain circumstances [...when] used in such a manner as to create a high probability of serious bodily injury or death." *Commonwealth v. Raybuck*, 915 A.2d 125, 128 (Pa. Super. 2006) (internal citations omitted). Moreover, "evidence of manual strangulation is also sufficient to establish specific intent required for first-degree murder." *Commonwealth v. Mitchell*, 902 A.2d 430, 445 (Pa. 2006) (citation omitted).

The medical examiner testified that the victim's cause of death was a combination of a stab wound to the left jugular vein and strangulation. N.T., 10/7/2014, at 20-25. There were also injuries to the victim "consistent with a struggle." *Id.* at 23. The stab wound penetrated two inches into the decedent's neck. *Id.* at 20. The medical examiner removed "a plastic tip of a pen along with a spring that goes into the plastic tip [that] was stuck in the subject's throat." *Id.* A forensic scientist from the Pennsylvania State Police laboratory testified that she analyzed the broken pen casing found at

the scene of the crime and discovered Appellant's DNA inside of it. N.T., 10/8/2014, at 71-73. Appellant was one of the last people seen on surveillance video with the decedent before his demise. N.T., 10/7/2014, at 130-138. Appellant admitted to detectives that he had a $6,000.00 drug debt that would be forgiven if he killed the victim. N.T., 10/8/2014, at 114-115.

Viewing the evidence in the light most favorable to the Commonwealth, as our standard requires, we conclude the Commonwealth presented sufficient evidence to support Appellant's first-degree murder conviction. Here, there was no dispute that a human being was killed. The Commonwealth provided evidence that Appellant caused the death by showing: (1) Appellant had a motive to kill the victim to have a debt discharged; (2) Appellant was last seen with the decedent; and (3) Appellant's DNA was found on the murder weapon. The Commonwealth also proved Appellant's specific intent to kill the victim. Appellant employed several methods to kill the victim, forcefully stabbing him in a vital organ and strangling him, while the decedent struggled. All of this evidence taken together demonstrated a willful, deliberate, and premeditated killing. Thus, we conclude the Commonwealth proved each element necessary to support Appellant's first-degree murder conviction.

Furthermore, while Appellant implicated another person in the murder during his confession to police, the jury was free to believe all, part or none of that evidence. The Commonwealth also presented evidence that

- 8 -

Appellant was never able to identify Terrence Gardner with specificity and police were unable to locate a man by that name. N.T., 10/8/2014, at 120-121. Accordingly, we need not consider Appellant's conviction in light of an alternative theory of accomplice liability.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2016