J. A10045/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FREDERICK F. BROWN, | : | No. 3503 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 6, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009721-2013

BEFORE:  DUBOW, J. SOLANO, J. AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 10, 2017**

Frederick F. Brown appeals from the October 6, 2015 judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction in a waiver trial of aggravated assault, simple assault, and recklessly endangering another person ("REAP").[1]  The trial court imposed an aggregate term of imprisonment of 3½ to 10 years, followed by 2 years of reporting probation.  We affirm.

The trial court summarized the factual history of the case as follows:

> At trial, the complainant, Carmen Cook, testified that she had lived with Appellant in an intimate relationship, but left in February 2013 due to Appellant's abusive behavior.  Ms. Cook testified that on one prior occasion, Appellant had tried to stomp her face and that he had choked her on another occasion.  On the afternoon of June 1, 2013,

---

[1] 18 Pa.C.S.A. §§ 2702(a)(4), 2701(a)(1), and 2705, respectively.

Ms. Cook left a friend's house where she had gotten high on crack cocaine and beer and walked to a nearby Hoagie City. When she turned the corner, Ms. Cook saw Appellant sitting outside the store on a rock. As Ms. Cook then spoke with a man named Warren who was sweeping up the outside of the store, Appellant got up, took something from his pocket and charged at her, swinging and hitting her in the head. Ms. Cook was unable to see the object Appellant removed from his pocket because it was wrapped in a paper napkin or towel. When Ms. Cook then ran into Hoagie City, Appellant followed and hit her again in the head. Ms. Cook realized she had been hurt when she saw blood coming down the side of her face.

Ms. Cook immediately went across the street to the police station where she reported the assault. Philadelphia Police Officer Charles Nelson who was at the station at the time testified that Ms. Cook was very upset, screaming and covered in blood. He further testified she stated that her ex-boyfriend had assaulted her. Police transported Ms. Cook to the emergency room at Temple Hospital where she received six stitches for the gash in the front of her head and four stitches for the laceration in the back of her head.

While in the emergency room, Ms. Cook observed Appellant enter and immediately told police. Appellant also called her several times in the hospital. Although at trial Appellant denied ever coming to the hospital or calling Ms. Cook there, he admitted to police after his arrest that he had indeed gone to the hospital and had called Ms. Cook three or four times while she was in the emergency room.

Appellant testified at trial that he did not assault Ms. Cook. He stated that he was eating some food outside Hoagie City when Ms. Cook walked up with a man with whom she was living and asked Appellant for a cigarette and some money. Appellant claimed that when he pulled out his money, the male hit him in the chest while Ms. Cook

snatched the money from him and ran into the store. Appellant followed them into the store and a tussle ensued as he tried to get his money back. Appellant theorized that Ms. Cook probably got hurt in the tussle over the money and denied having any object in his hand. Appellant did not report the alleged robbery to police, and admitted on cross-examination to having hit a former girlfriend in the head with a master lock in 2009.

Trial court opinion, 6/3/16 at 2-3 (citations to notes of testimony omitted).

The trial court summarized the procedural history, as follows:

On July 30, 2013, Appellant[] was arrested and charged with aggravated assault (F2), simple assault, [REAP], and other related charges. Prior to trial, the Commonwealth brought a Motion to Admit Other Bad Acts Evidence, which following a hearing, the Court granted on February 10, 2014. Appellant then proceeded to trial before this Court sitting without a jury on August 3, 2015. On that date the Court found Appellant guilty of aggravated assault (F2), simple assault, and [REAP]. On October 6, 2015, the Court sentenced Appellant to an aggregate term of 3 1/2 to 10 years [of] imprisonment followed by 2 years [of] reporting probation.

Appellant filed post-sentence motions on October 15, 2015, which were denied by the Court on November 17, 2015. Notice of Appeal was filed by Appellant on November 19, 2015. On November 25, 2015, this Court ordered Appellant to file a concise statement of the matters complained of on appeal pursuant to [Pa.R.A.P. 1925(b)]. A timely 1925(b) Statement of Matters Complained of on Appeal was filed by Appellant on December 14, 2015. Because counsel for Appellant had not yet received all the notes of testimony at that time and requested additional time, a Supplemental Statement of Matters Complained of on Appeal was subsequently filed on April 21, 2016.

*Id.* at 1-2. The record further reflects that the trial court filed its Rule 1925(a) opinion on June 3, 2016.

Appellant raises the following issues for our review:

> 1. Because it was not proven that any particular device used by appellant could be a deadly weapon or that it was calculated to produce death or serious bodily injury, was not the evidence insufficient to convict appellant of aggravated assault, graded as a felony of the second degree?
>
> 2. Was not the intrinsic admission of evidence of appellant's prior crime of hitting a former girlfriend in the head with a Master Lock an abuse of the lower court's discretion, where the evidence tended to show only appellant's bad character and propensity to commit such crimes and was not relevant to appellant's intent, common plan or scheme, modus operandi, or other probative fact?

Appellant's brief at 3.

Appellant first complains that the evidence was insufficient to sustain his aggravated assault conviction.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be

- 4 -

drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa.Super. 2004) (citation omitted).

Under the Crimes Code, a person may be convicted of aggravated assault, graded as a second-degree felony, if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4). The Crimes Code defines "deadly weapon" as:

[a]ny firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S.A. § 2301.

This court has recently explained that

[t]he plain language of the Legislature's definition of "deadly weapon" makes clear that the weapon need not be a "firearm . . . or any device designed as a weapon," but may also be "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."

18 Pa.C.S.[A.] § 2301. "Although deadly weapons are commonly items which one would traditionally think of as dangerous (*e.g.*, guns, knives, etc.), there are instances when items which normally are not considered to be weapons can take on a deadly status." *Commonwealth v. Scullin*, 414 Pa. Super. 442, 607 A.2d 750, 753 (Pa.Super. 1992), *appeal denied*, 533 Pa. 633, 621 A.2d 579 (Pa. 1992). These items "take on such status based upon their use under the circumstances." *Commonwealth v. Rhoades*, 2010 PA Super 204, 8 A.3d 912, 917 (Pa.Super. 2010); *appeal denied*, 611 Pa. 651, 25 A.3d 328 (Pa. 2011), *cert. denied*, 565 U.S. 1263, 132 S. Ct. 1746, 182 L. Ed. 2d 536 (2012). *See Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313, 323 (Pa. 1992) (holding "[a] deadly weapon need not be . . . an inherently lethal instrument or device"). Thus, "[a]n ax, a baseball bat, an iron bar, a heavy cuspidor, and even a bedroom slipper have been held to constitute deadly weapons under varying circumstances." *Commonwealth v. Prenni*, 357 Pa. 572, 55 A.2d 532, 533 (Pa. 1947); *see Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa.Super. 1997) ("[a] baseball bat, when swung at the head, can be a very deadly weapon"). Even an egg can be a deadly weapon when thrown from the roof of a building at the windshield of a vehicle. *See Commonwealth v. Roman*, 714 A.2d 440 (Pa.Super. 1998), *appeal denied*, 556 Pa. 707, 729 A.2d 1128 (Pa. 1998). *See also Commonwealth v. Raybuck*, 915 A.2d 125 (Pa.Super. 2006) (holding that mouse poison became deadly weapon when included in sandwich for husband to consume; fact that amount was insufficient to cause serious bodily injury was irrelevant to classification as deadly weapon).

*Commonwealth v. Chambers*, 157 A.3d 508, 517-518 (Pa.Super. 2017).

Here, the victim testified that as she walked to Hoagie City, she saw appellant sitting on "the rock," at which time he took something out of his pocket and "came charging at [her] swinging at [her] head." (Notes of

testimony, 8/3/15 at 12.) The victim further testified that the object that appellant took out of his pocket was wrapped in brown paper, which she described as "the paper that you dry your hands with". (***Id.*** at 37.) Although the victim was unable to see the object appellant had in his hand that was wrapped in brown paper, she could see that appellant was holding an object wrapped in brown paper and knew that he repeatedly struck her on the head with that wrapped object. (***Id.*** at 17, 20.)

The record further reflects that following this assault, the victim went to the police station where she arrived "covered with blood and screaming, very hysterical." (***Id.*** at 54.) The victim was transported to the hospital where she "presented with an open, bleeding, deep laceration to her left temple." (***Id.*** at 52.) At trial, the Commonwealth and defense stipulated to the victim's medical records which revealed that "[t]he laceration was irregularly shaped and approximately five centimeters in length. [The victim] also presented with a full thickness linear laceration to the back of her head approximately four centimeters in length." (***Id.*** at 52.) The "laceration to the left temple was closed with six sutures[, and] the laceration to the back of the head was closed with [four] staples." (***Id.***)

Appellant now complains that the evidence was insufficient to convict him of second-degree felony aggravated assault because "there is not a 'scintilla of evidence' about the identity or nature of what appellant used" to strike the victim on her head and cause a deep laceration to the left temple

that required six sutures to close, as well as a deep laceration to the back of the head that required four staples to close. (Appellant's brief at 14.) According to appellant, then, so long as a criminal defendant conceals the device or instrumentality that he uses to repeatedly strike his victim on the head, he cannot be convicted of second-degree aggravated assault. Appellant is mistaken.

By his own admission, appellant concedes that "the gash and laceration on the [victim's] head suggest something sharp caused [her] injuries." (Appellant's brief at 15.) Appellant used that sharp object to inflict multiple blows to the victim's head that resulted in two deep head lacerations that required emergency medical intervention to close. Therefore, because the record demonstrates that appellant attempted to cause or intentionally or knowingly caused bodily injury to the victim by repeatedly striking her on the head with a sharp object wrapped in brown paper which was calculated or likely to produce death or serious bodily injury, the evidence was sufficient to convict appellant of second-degree aggravated assault.

Appellant next complains that the trial court abused its discretion when it admitted evidence that appellant struck his former girlfriend on the head with a Master Lock because that evidence "tended to show only appellant's bad character and propensity to commit such crimes and was not relevant to

appellant's intent, common plan or scheme, modus operandi, or other probative fact."  (Appellant's brief at 3.)

"On appeals challenging an evidentiary ruling of the trial court, our standard of review is limited.  A trial court's decision will not be reversed absent a clear abuse of discretion."  **Commonwealth v. Aikens**, 990 A.2d 1181, 1184 (Pa.Super. 2010) (citations omitted).  "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will."  **Id.** at 1184-1185 (citations omitted).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1).  However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2).[2]

---

[2] **Rule 404.  Character Evidence; Crimes or Other Acts**

. . . .

**(b)  Crimes, Wrongs or Other Acts.**

    **(1)  Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Id.* at 1185 (citations to case law omitted).  In order for prior bad acts to be introduced under this particular exception, a close factual nexus must exist to sufficiently demonstrate the connective relevance of the prior bad acts to the criminal charge at issue.  *Commonwealth v. Sitler*, 144 A.3d 156, 163-164 (*en banc*) (Pa.Super. 2016) (citations omitted).

At the outset, we note that in its opinion, the trial court explained that it admitted the evidence because appellant's 2009 simple assault conviction for hitting his former girlfriend on the head with a Master Lock was highly probative of intent, as appellant claimed that the victim in this case and her male companion robbed him and that the victim likely sustained her injuries during that robbery.  (Trial court opinion, 6/3/16 at 6.)  The trial court also

---

> **(2)** **Permitted Uses.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> . . . .

Pa.R.E. 404(b)(1)-(2).

- 10 -

found the evidence admissible to show a common plan, scheme, and design based on the factual nexus between the assaults, which the trial court determined to be relevant to the issue of intent. (*Id.* at 6-7).

Here, a close factual nexus exists that sufficiently demonstrates the connective relevance of the 2009 assault and the assault that is the subject of this appeal. The record reflects that at the time of both assaults, both victims had been in a romantic relationship with appellant that had ended. Additionally, in both assaults, appellant pulled an object out of his pocket and struck the victim on or about the head, causing the victim to sustain injury. Moreover, as noted by the trial court at the motion *in limine* hearing, "the fact that there was violence in ending the relationship [seems to be] the same thing here." (Notes of testimony, 2/10/14 at 8.) Indeed, defense counsel acknowledged that "it's very similar." (*Id.*) And although defense counsel would not concede admissibility, she admitted to having "little argument" against the admission of this evidence. (*Id.*)

With respect to the balancing of the probative value of this evidence against its prejudicial impact, we note that in its opinion, the trial court did not balance the two. We further note that appellant lodges numerous complaints in his brief regarding the prejudicial impact that he suffered as a result of the admission of this evidence. Because appellant was tried in a waiver trial, however, we presume that the trial court, sitting as fact-finder, ignored any potentially prejudicial evidence and remained objective in

weighing all of the evidence in order to render a true verdict. ***See***

***Commonwealth v. Thomas***, 783 A.2d 328, 335 (Pa.Super. 2001) (reaffirming that "it has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial information in reaching a verdict" (citation omitted)).  We discern no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2017