J-S19034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ISSA  BENOIT | : | |
| | : | |
| Appellant | : | No. 48 EDA 2017 |

Appeal from the Judgment of Sentence January 16, 2009
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.:  CP-51-CR-0012147-2007

BEFORE:   SHOGAN, J., NICHOLS, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                        **FILED JULY 2, 2018**

Appellant, Issa Benoit, appeals from the judgment of sentence imposed

on January 16, 2009, following his jury conviction of attempted murder,

aggravated assault, firearms not to be carried without a license, carrying

firearms on the public streets of Philadelphia, and possession of an instrument

of crime.  After remand, sentence was finalized on December 8, 2016, when

the trial court denied Appellant's motion *in limine* to admit expert testimony

on the unreliability of eyewitness identification.[1]  Appellant also challenges the

discretionary aspects of the sentence.  We affirm on the basis of the trial court

opinion.

---

[1] As counsel properly appealed from the judgment of sentence, this is a direct
appeal, not an appeal from a PCRA order, and we have amended the caption
accordingly.

---

*   Retired Senior Judge assigned to the Superior Court.

This case returns to us after a preceding panel affirmed the judgment of sentence, rejecting a challenge to the sufficiency of the evidence. (*See Commonwealth v. Benoit*, No. 692 EDA 2015, 2016 WL 783865, at *5 (Pa. Super. filed February 29, 2016) (unpublished memorandum)). However, the panel remanded the case to the trial court for consideration of Appellant's challenge to eyewitness identification, pursuant to *Commonwealth v. Walker*, 92 A.3d 766, 769 (Pa. 2014). (*See id.*). The *Walker* Court abolished Pennsylvania's *per se* prohibition against the admission of expert testimony regarding eyewitness identifications in criminal cases, leaving the admissibility of such expert testimony to the discretion of the trial court. Here, prior to our Supreme Court's decision in *Walker*, the trial court had denied Appellant's proffer of expert testimony on eyewitness identification, under then-controlling authority.[2]

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. (*See* Trial Court Opinion, 8/17/17, at 3-5). Therefore, we need not restate them at length here. For the convenience of the reader, we note briefly that Appellant's jury conviction arose, among other things, out of Appellant's firing his handgun point blank at one of two Philadelphia police officers on the Narcotics Strike Force who

---

[2] *See e.g.*, *Commonwealth v. Spence*, 627 A.2d 1176, 1182 (Pa. 1993) (holding expert opinion not allowed to intrude on jury's basic function of deciding credibility).

had put Appellant under surveillance from a minivan for about fifteen minutes while he engaged in the apparent sale of narcotics.

On January 16, 2009, the trial court sentenced Appellant to an aggregate term of not less than seventeen nor more than thirty-four years of incarceration, to be followed by three years of probation.[3] Following the trial court's denial of Appellant's motion for a new trial and to admit expert testimony on eyewitness identification, Appellant timely appealed. He filed a court-ordered statement of errors on April 6, 2017. The trial court filed an opinion on August 17, 2017.

Appellant raises three questions for our review:

> [1.] Is the Appellant is [sic] entitled to a new sentence hearing when the trial court imposed a sentence which was outside the sentence guidelines and the trial court in its statement of the reasons for the sentence showed partiality toward the complainant and trial court also considered arrests that did not result in convictions, the climate in the city and what was happening to police officers which were matters that the defendant [sic] was not responsible for or could control?
>
> [2.] Did the trial court err in denying [A]ppellant a new trial where [A]ppellant could present expert witness testimony regarding the unreliability of eye-witness identification in the circumstances of this case when the Commonwealth's entire case rested solely on the eyewitness testimony?
>
> [3.] Did the trial court err in asserting that because of the delay from the trial to a retrial the Commonwealth would not be able to get a fair trial if the [c]ourt allowed expert witness

---

[3] Appellant filed a timely post-sentence motion, which was denied. His direct appeal rights were reinstated after his then-counsel failed to file a brief.

testimony as to the eyewitness identification in this case when prejudice to the Commonwealth's case is not one of the factors that a court is allowed to consider in deciding if this testimony is admissible?

(Appellant's Brief, at 2).[4]

The trial court properly identifies the applicable standards of review including review of challenges to the admission of expert testimony. We add the following observations from controlling authority only for further clarity.

> The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Nobles v. Staples, Inc.**, 150 A.3d 110, 113 (Pa. Super. 2016) (citations and internal quotation marks omitted). Pennsylvania Rule of Evidence 702 permits expert testimony on subjects concerning knowledge beyond that possessed by a layperson. **See** Pa.R.E. 702(a). "[I]t is the job of the trial court to 'assess the expert's testimony to determine whether the expert's testimony reflects the application of expertise or strays into matters of common knowledge.' "

---

[4] We note, as aptly observed by the Commonwealth, that Appellant's brief does not comply with this Court's font requirements. (**See** Commonwealth's Brief, at 5 n.3); **see also** Pa.R.A.P. 124(a)(4) (Lettering shall be no smaller than 14 point in the text and 12 point in footnotes). Counsel for Appellant also fails to provide any standard of review, confuses scope of review with standard of review, and mis-cites the scopes of review he does provide. (**See** Appellant's Brief, at 1).

***Snizavich v. Rohm & Haas Co.***, 83 A.3d 191, 194 (Pa. Super. 2013), *appeal denied*, 96 A.3d 1029 (Pa. 2014) (citations omitted).

> Trial courts will exercise their traditional role in using their discretion to weigh the admissibility of such expert testimony on a **case-by-case basis. It will be up to the trial court to determine when such expert testimony is appropriate**. . . . The admission must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification. We find the defendant must make an on-the-record detailed proffer to the court, including an explanation of precisely how the expert's testimony is relevant to the eyewitness identifications under consideration and how it will assist the jury in its evaluation.

***Walker***, ***supra*** at 792 (emphasis added).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court we conclude that there is no merit to any of the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (***See*** Trial Ct. Op., 8/17/17, at 5-14, concluding: (1) trial court, which had benefit of presentence investigation report, properly exercised its discretion in sentencing Appellant in aggravated range for attempted murder of police officer and related offenses; (2) trial court properly exercised its discretion, after hearing, in deciding that impact of expert's testimony on various ***Walker*** factors would not be sufficiently relevant or significant enough to justify new trial, where trained, experienced police officers who specialized in surveillance had extended opportunities to observe Appellant for fifteen minutes, before he approached their van and began shooting; speaking to them before

opening fire; and (3) incidental comments of trial court judge confirming credibility of testifying officer with casual reference to personal experience do not establish partiality, prejudice, bias or ill will, and fail to establish manifest abuse of discretion, where trial court expressly based its rulings on objective principles of applicable law).

Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/18

Circulated 06/07/2018 03:31 PM

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA

CP-51-CR-0012147-2007 Comm. v Benoit, Issa
Opinion

V.

7989931621

ISSA BENOIT, APPELLANT

TRIAL DIVISION

CP-51-CR-0012147-2007

48 EDA 2017

## OPINION

This opinion addresses Appellant Issa Benoit's appeal of this Court's denial of his Motion for a New Trial. This Court finds that the issues raised in the Appellant's Appeal lack merit for the reasons set forth in this opinion.

## I. CASE HISTORY

On March 1, 2007, the police arrested the Appellant, and the next day the Commonwealth filed a complaint charging the Appellant with Attempted Murder (F1), Aggravated Assault (F1), Possession of a Firearm Prohibited (VUFA § 6105)(F2), Firearms Not to be Carried Without a License (VUFA § 6106)(F3), Terroristic Threats (M1), Criminal Mischief (M1), Carrying Firearms in Public in Philadelphia (VUFA § 6108)(M1), Possession of an Instrument of Crime (PIC)(M1), Simple Assault (M2), and Reckless Endangerment of Another Person (REAP)(M2).[1] On October 5, 2007, the Honorable David C. Shuter held all charges for court.

On October 21, 2008, a jury found the Appellant guilty of Attempted Murder (F1), Aggravated Assault (F1), VUFA § 6105 (F2), VUFA § 6106 (F3), VUFA § 6108 (M1), and PIC

---

[1] The Appellant was charged with two counts of Attempted Murder and Aggravated Assault against police officers Sean Devlin and Joseph Domico.

1

(M1).[2] On January 16, 2009, the court sentenced the Appellant to 10 to 20 years incarceration for Attempted Murder, 5 to 10 years consecutive incarceration for VUFA § 6105, 2 to 4 years consecutive incarceration for VUFA § 6106, and 3 years consecutive probation for PIC.[3] On January 23, 2009, the Appellant filed a Post-Sentence Motion which the court denied on February 5, 2009.

On February 25, 2009, the Appellant filed a Notice of Appeal to the Superior Court.[4] On April 16, 2010, the appeal was dismissed for failure to file a brief. On February 14, 2011, the Appellant filed a Motion to Reinstate Appeal, and the Superior Court denied the motion without prejudice on March 7, 2011.[5] On April 28, 2011, the Appellant filed a *pro se* Post Conviction Relief Act (PCRA) Petition. On December 9, 2013, the Appellant filed an Amended PCRA Petition. On February 18, 2015, the court granted PCRA relief and reinstated the Appellant's direct appellate rights. On March 3, 2015, the Appellant filed a second Notice of Appeal to the Superior Court.[6] On February 29, 2016, the Superior Court affirmed the judgment in part, and remanded the case for the trial court to hold a hearing to determine whether expert testimony concerning eyewitness identification would be admissible in this case.

On April 13, 2016, the Appellant filed a Motion for Frye Hearing and a Motion for Funds for an Expert. On April 27, 2016, the court granted the Motion for Funds, and on June 2, 2016, the defense submitted the report of eyewitness identification expert Dr Suzanne Mannes. On June 29, 2016, the Commonwealth filed a Motion *in Limine* to Preclude Identification Expert Testimony, and the Appellant filed a reply to the Motion on August 6, 2016. On November 3,

---

[2] The jury found the Appellant guilty of Attempted Murder and Aggravated Assault only against Officer Sean Devlin, and the Commonwealth *nolle prossed* the remaining charges
[3] There was no further penalty imposed on the Aggravated Assault or VUFA § 6108 charges
[4] 1658 EDA 2009.
[5] The Superior Court stated that the Appellant could seek relief pursuant to the Post Conviction Relief Act, 42 Pa C S §§ 9541 et seq. (14 EDM 2011).
[6] 692 EDA 2015

2

2016, after considering Dr. Mannes' report, the court held the hearing to determine if expert testimony would be admissible. On December 8, 2016, the court determined that identification expert testimony would not be admissible in this case and denied the Motion for a New Trial.

On December 19, 2016, the Appellant filed a third Notice of Appeal to the Superior Court. On March 27, 2017, the court ordered counsel to file a Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(b). On April 6, 2017, the Appellant filed his Statement raising the following issues on appeal:[7]

> 1. The trial court erred in denying the defendant a new trial where the defendant could present an expert witness regarding the unreliability of eye witness of [sic] identification in regards to cross-racial identification, the identification of an individual at night, where the witness did not [sic] prior contact with the individual identified, and the contact was brief and in a stressful situation See Commonwealth v. Walker, 92 A3d 776 (2014).
> 2. The trial court erred in holding that the Commonwealth could not get a fair trial, if the Court ordered a new trial in the case and allowed expert witness testimony as to eye-witness identification in the case under Commonwealth v. Walker, 92 A3d 776 (2014).
> 3. The Court abused its discretion in imposing a sentence of 17 to 34 years in prison followed by 3 years probation because the sentence was above the aggravated range of the sentence guidelines and the Court ran the sentences consecutive. The Commonwealth also argued that the Court should bas [sic] the defendant [sic] sentence on not only convictions but also arrests. The Commonwealth also argued the sentence should be based on the "climate in the city" NT 1-6-09 @ 25-26. Also the Court based its sentence on an incident that happened to the Court that made the court sympathetic to the victim in this case. See NT 1-16-09 @32. The sentence in this case was unreasonable and based on factors not permitted to be considered and therefore the defendant is entitled to a new sentence hearing.

## II. FACTS

On February 22, 2007 at approximately 9:00 p.m., Police Officers Sean Devlin and Joseph Domico set up surveillance to monitor illegal narcotics sales at 151 W. Apsley Street.[8] Both plain clothes officers were part of the Narcotics Strike Force at the time and monitored the

---

[7] Copied verbatim from the appellant's Statement of Matters Complained on Appeal pursuant to Pa.R A P 1925(b)
[8] Notes of Testimony, 10/14/2008, p. 9-11, 13.

3

location from an unmarked blue Dodge Caravan minivan.[9] The minivan was parked across the street, approximately 50 feet away from 151 W. Apsley Street.[10] Additionally, Officer Devlin used binoculars to observe the transactions across the street.[11] There were three rows of seats in the van, and the second row passenger side seat had been removed to make room for an officer to hide on the floor.[12] Officer Devlin hid in the van directly behind the front passenger seat while Officer Domico hid in the back of the van.[13]

From their vantage point, **the officers observed the Appellant engage in two drug sales.**[14] They watched as several unidentified people handed the Appellant money [15] After receiving the money, the Appellant went inside of 151 West Apsley Street, exited several minutes later, and gave the unidentified people small objects.[16] **Based on these observations**, Devlin contacted the backup officers and **gave them a description of the Appellant.**[17] The police did not arrest these individuals.[18]

After approximately **fifteen minutes**, the Appellant walked across the street toward the van.[19] He put his face to the glass and looked into the driver's side front window.[20] He said to the officers, "I see you hiding in there pussy. Oh, you want to bang."[21] The Appellant then pulled out a handgun from his right waistband and fired a bullet into the van at Officer Domico.[22] The officers saw the gun's muzzle flash, heard the deafening sound of the gun, heard the sound of the

---

[9] Id at 10-12, 20, 62.
[10] Id. at 16
[11] Id at 18.
[12] Id at 14
[13] Id at 13, 63.
[14] Id at 14-15
[15] Id at 15, 64
[16] Id. at 64.
[17] Id at 16
[18] Id at 92
[19] Id at 16, 18, 28, 68
[20] Id at 55
[21] Id at 16-17
[22] Id at 17, 20, 68

4

front driver's side window blowing out, and heard the glass fall to the ground.[23] Officer Devlin then pulled out his weapon and returned fire.[24] The Appellant fled the scene but was apprehended approximately one week later. **Officer Domico later picked out the Appellant from a photo array, and Officer Devlin identified the Appellant at a lineup and the preliminary hearing as the perpetrator.[25]**

## III. DISCUSSION

### I. The Court Did Not Err When It Denied the Appellant's Motion for a New Trial.

The Appellant first argues that the court should have granted a new trial to afford him an opportunity to present expert witness testimony concerning the reliability of identifications. This argument lacks merit.

In Com. v. Walker, the Superior Court of Pennsylvania held that "expert testimony on the limited issue of eyewitness identification… may be admissible, at the discretion of the trial court, and assuming the expert is qualified, the proffered testimony relevant, and will assist the trier of fact." 92 A.3d 766, 792 (Pa. 2014). The expert testimony is only admissible where "the Commonwealth's case is solely or primarily dependent upon eyewitness testimony." Id. at 787.

Furthermore, the testimony must not only assist the trier of fact, but it must also be beyond the knowledge of a layperson and it must pass the Frye "general acceptance" test. Id. at 789. To satisfy Frye, the party offering the evidence must show that the methodology is generally accepted by scientists in the relevant field, but need not prove the conclusions are generally accepted. Grady v. Frito-Lay, Inc., 839 A.2d 1038, 1045 (Pa. 2003). The Court determined that after a trial court finds that the expert testimony satisfies Frye, "the admission

---

[23] Id. at 17, 66
[24] Id.
[25] Id. at 35, 76

5

must be properly tailored to whether the testimony will focus on particular characteristics of the identification at issue and explain how those characteristics call into question the reliability of the identification." Walker, 92 A.3d at 792.

To show that the expert testimony should be admitted, the defendant must make an on-the-record detailed proffer to the court which includes: (1) an explanation of precisely how the expert's testimony is relevant to the eyewitnesses' identifications and (2) how it will assist the jury in its evaluation. Walker, 92 A.3d at 792 The proof should establish the presence of factors which may be shown to impair the accuracy of eyewitness identification in aspects which are beyond the common understanding of laypersons such as: (1) the impact on accuracy of identification due to weapon focus during crime; (2) the reduced reliability of identification in cross-racial identification cases; (3) decreased accuracy in eyewitness identification in high-stress/traumatic situations; (4) the risk of mistaken identification when police investigators do not warn witness, prior to viewing photo array or lineup, that the perpetrator may or may not be in the display; and (5) the lack of correlation between witness statements of confidence and witness accuracy. Id.

In this case, although the Commonwealth's case primarily depended on the identifications of the Appellant by Officers Domico and Devlin, the impact of an expert's testimony would not be relevant or significant enough to justify a new trial. Most of the Walker factors that arguably impair eyewitness identification accuracy do not apply in this case. The Walker factors are negated by the extended opportunities the officers had to observe the Appellant from their tactical vantage point before the shooting took place. As previously mentioned, **the officers had an opportunity to observe the Appellant from fifty feet away for**

6

**at least fifteen minutes before he approached their vehicle. Just as importantly, Officer Devlin observed the Appellant using binoculars** to enhance his view.

For the sake of thoroughness, let us examine whether any of the Walker factors exists to warrant identification expert testimony in this case. The first factor (weapon focus), for the most part, does not apply because the officers did not see the Appellant's weapon until after he approached their vehicle. The officers observed the Appellant as he conducted narcotics sales across the street from where they were parked. They then watched the Appellant approach and stand approximately three feet from them while he looked into their van.[26] The Appellant did not even raise his weapon until after the officers had a chance to observe him up close.[27] Therefore, expert testimony on how weapon focus impairs accuracy of identification would not be as relevant or helpful to a factfinder when one considers the facts of this case.

The second factor (cross-racial identification) does apply, but it is mitigated by the extent of the officers' protracted observations and the totality of the circumstances. The Appellant is African American and the officers are white. However, the officers watched the Appellant over an extended period of time and saw him up close when he approached them. Officer Devlin was also using binoculars to observe the Appellant during an official and protracted investigation. The fact that the Appellant was actually the subject of an official investigation gave the officers a level of attentiveness that would normally be lacking whenever a victim is accosted by a perpetrator without warning. Hence, although the identifications were cross-racial, this factor is reduced by the extent of the officers' observations and other corroborative evidence

The third factor does not really apply because the officers were only in a high stress situation for the last few seconds of their interaction with the Appellant. Although the officers

---

[26] Notes of Testimony, 10/14/2008, p 18
[27] Id at 19-20

7

were in a high stress situation after the Appellant fired into their vehicle, they still had the opportunity to observe him for an extended period of time without being under any stress before he fired. Both officers unequivocally testified that, even as the Appellant approached their vehicle, they were not apprehensive because they had been approached many times while on surveillance.[28] They observed the Appellant from across the street and as he approached their vehicle. Their observations were not made under stress or trauma. Therefore, expert testimony on how high stress and trauma could cause decreased identification accuracy would not have been as helpful or relevant in light of the facts of this case.

The fourth factor is arguably inapplicable in this case because both of the witnesses are police officers who are familiar with identification procedures. They had a greater understanding of police procedures than a layperson and knew that the Appellant might not be in the photo array or lineup. Moreover, Officer Devlin looked at a photo array a day or two after the shooting and confirmed that the Appellant **was not** in the array.[29] Officer Devlin would not have had to be told that the Appellant would not necessarily be in the subsequent lineup that he viewed because of his knowledge of photo identification procedures. Therefore, it would not have been as relevant or helpful to a jury in our case for a judge to permit expert testimony about the risk of mistaken identification when police officers do not warn witnesses that a defendant may not be in the photo array or lineup.

Finally, the fifth factor does apply to our case. However, its applicability does not warrant a new trial under the circumstances. Officer Domico testified that he identified the Appellant as the perpetrator in a photo array six days after the shooting When signing the photo

---

[28] Id at 21, 77-78
[29] Id at 29-30.

8

array, Domico indicated that he was ninety-five percent sure of his identification.[30] Although Domico indicated his level of confidence in the identification evidence before the jury, it was a high level of confidence (95%). Although Domico did not testify that he was 100% sure about his identification, a judge's allowing expert testimony about the lack of correlation between a witness's confidence and accuracy is not a compelling justification for an entire new trial. This is because the jury heard Officer Domico's testimony, heard the court's charging instructions, and was able to make its own assessment about the adequacy of Domico's photo identification.

In this case, the minimal assistance to a jury that an identification expert's testimony would provide does not warrant a new trial. Although an expert could testify about the decreased accuracy of eyewitness identifications in cross-racial identification cases, and about a lack of correlation between confidence and accuracy, such testimony would not be needed or overly relevant in this case under the circumstances. As mentioned, the two eyewitnesses in this case are trained police officers. Moreover, they were observing the Appellant from a close distance, using binoculars, for approximately fifteen minutes without any stress or trauma. Our case is distinct from Walker wherein the witnesses only viewed the perpetrators for a brief period of time while under a great amount of stress because the perpetrators held them at gunpoint. Granting a new trial ten years after the shooting took place would not serve the interests of justice and would also place an unnecessary strain on judicial resources. It should be noted that the court has occasionally allowed an identification expert to testify, but in those cases, the Walker factors were more prevalent and relevant under the circumstances. However, in this case, the court did not err when it denied the Appellant's Motion for a New Trial because expert testimony would not assist the factfinder.

---

[30] Id at 75-76.

9

## II. The Court Did Not Err When it Commented that the Commonwealth Could Not Get a Fair Trial

The Appellant next argues that the court erred by holding that the Commonwealth could not get a fair trial if expert witness testimony were admitted. The court's comment was taken out of context.

First of all, under Pa.R.A.P. Rule 302(a), "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." In this case, the Appellant did not make any objection when the court made its comments, thus this issue is waived and cannot be brought on appeal.

Just as importantly, however, the court never held that the Commonwealth could not get a fair trial. The court made the following remarks:

> I think to bring in an expert at this point, I think two or three years down the line it would not be the wisest thing to do, because I think the Commonwealth would be at a disadvantage because of the time elapsed. Even if you did bring the expert in, so much time has passed from the defendant's trial would -- I don't think you could have a fair trial, and I don't think the Commonwealth could properly put on its case. But that wasn't my motivation for the decision. It was based on the reasons that I gave.

N.T., 12/8/2016, p. 12-13.

The court merely mentioned that neither side would have a fair trial if a new trial were granted. Moreover, the court expressly stated that it did not consider any disadvantage the Commonwealth might face when making its decision to deny the Appellant's motion. Therefore, the court did not err because it did not hold that only the Commonwealth would not have a fair trial.

It should be noted that this particular hearing was conducted by video and audio recording with the agreement of all the parties, so this court has concerns about whether the audio transcription accurately depicted what the court actually said word for word at the

10

proceeding. The court was merely explaining that allowing expert testimony years after the trial would not further the interest of justice or be appropriate in light of the facts of this case. The court is well aware of the Walker holding and that our constitution demands that the defendant have a fair and impartial trial. However, courts should only order that identification experts testify when Walker factors have relevance and the facts of a particular case require expert testimony under Pa.R.E. Rule 702. There has to be a fair application of the Walker holding to both the defense and the Commonwealth. Only through such an application can there be a fair trial.

## III. The Court Did Not Abuse Its Discretion When It Sentenced the Appellant.

Finally, the Appellant argues that the court abused its discretion when it imposed a sentence above the aggravated range of the sentencing guidelines. This argument lacks merit when one considers the circumstances.

Before examining the Appellant's claim, we should highlight several principles of law relating to sentencing. First, to challenge the discretionary aspects of a sentence, the Appellant must show that the trial court sentenced him inappropriately under the Sentencing Code. Com. v. Ferguson, 893 A.2d 735, 737 (Pa.Super.2006) (quoting Com. v McAfee, 849 A.2d 270, 274 (Pa.Super.2004)). To establish this, "the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." Id.

Second, the trial court has broad discretion when sentencing a defendant and the "sentence will not be disturbed by an appellate court absent manifest abuse. A sentence must either exceed the statutory limits or be manifestly excessive to constitute a manifest abuse." Com. v. Fries, 362 Pa. Super. 163, 167 (1987) (citing Com. v. White, 341 Pa. Super. 261, 270

11

Guidelines. Com. v Mouzon, 812 A.2d 617, 620 (2002); 204 Pa Code § 303.1; 42 Pa.C.S.A. § 9721. However, "[t]he sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record." Com. v. Cunningham, 805 A.2d 566, 575 (Pa. Super. 2002). In addition, the sentencing court has discretion to determine whether to make the sentence it is imposing concurrent with or consecutive to other sentences being imposed or previously imposed. Com. v. Graham, 661 A.2d 1367, 1373 (Pa. 1995).

Third, while the sentencing court has discretion in some respects, it has "no discretion to refuse to apply the deadly weapons enhancement when it is appropriate." Com. v. Raybuck, 915 A.2d 125, 129 (Pa.Super. 2006). A defendant "has used a deadly weapon if any of the following were employed by the [defendant] in a way that threatened or injured another individual: (i) Any firearm." 204 Pa. Code § 303.10(a)(2)(i).

Finally, the trial court must consider the particular circumstances of the offense as well as the character of the defendant at sentencing. Com. v. Boyer, 856 A.2d 149, 154 (Pa.Super. 2004). Here the court should consider the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. Id. Moreover, if the sentencing judge has reviewed the presentence investigation report, it will be presumed that he considered all of the relevant circumstances when determining an appropriate sentence. Id.

In our case, the Appellant's Prior Record Score was 3, and the Offense Gravity Scores were as follows: Attempted Murder was 13, VUFA § 6105 was 10, VUFA § 6106 was 9, and PIC was 4. The Sentencing Guidelines recommended a minimum sentencing range for Attempted Murder of 96 – 114 ± 12 months under the Deadly Weapon Enhancement. The recommended minimum sentencing range for VUFA § 6105 was 42 – 54 ± 12 months. The

12

recommended minimum sentencing range for VUFA § 6106 was 42 – 54 ± 12 months. Finally, the recommended minimum sentencing range for PIC was 3 – 14 ± 3 months.

The Appellant's sentence does not exceed the statutory limits, nor is it manifestly excessive. The court sentenced the Appellant to the statutory limit of 10 – 20 years for Attempted Murder where no serious bodily injury occurred, which is within the aggravated sentencing guidelines.[31] The court also sentenced the Appellant to the statutory limit of 5 – 10 years for VUFA § 6105 which is within the aggravated sentencing range.[32] The Appellant's sentences for VUFA § 6106 and PIC are well below the guideline ranges and statutory limits.

Moreover, the court considered all relevant circumstances when it sentenced the Appellant. The court reviewed the presentence investigation report that delineated the Appellant's personal, mental, and criminal histories. The court also considered the protection of the public, the impact of the offenses on the lives of the victims and community, and the rehabilitative needs of the Appellant At the sentencing hearing, Officer Devlin gave a victim impact statement, testifying that he still saw the muzzle flash from the Appellant's gun when he closed his eyes. In addition, the court heard testimony from the Appellant's brother, mother, and grandmother about the Appellant's character. The Appellant was also given an opportunity to speak, but he expressed no remorse.

In closing, the Appellant displayed a wanton disregard for human life when he intentionally shot into a vehicle occupied by two police officers who were conducting a drug investigation. His reckless and senseless actions showed that he is a danger to the public. The Appellant also lacked remorse for shooting at the officers. While giving its reasons for the sentences, the court remarked (as Officer Devlin gave his statement) that it had flashbacks to

---

[31] 18 Pa C S A. § 1102(c)
[32] 18 Pa C S A § 1103(2)

personal experiences that could have been life-threatening.[33] However, the court did not base the Appellant's sentence on its own personal feelings. Rather, the court briefly mentioned the incident in passing implying that it did not think that that Officer Devlin's statement was out of the realm of possibility based on what he experienced. When one considers the need to protect the public, the gravity of the offenses, the rehabilitative needs of the Appellant, and the circumstances of this case, the court's sentences were not unreasonable. Therefore, this claim should also be dismissed.

---

[33] N T, 1/16/2009, p 32

# IV. CONCLUSION

The court finds no merit in the Appellant's contentions. First, a new trial is inappropriate because an expert's testimony would not be overly relevant or assist a factfinder based on the facts of this case. The eyewitnesses were trained police officers who observed the Appellant for fifteen minutes before the shooting occurred. Second, the court never held that the Commonwealth would be disadvantaged at trial and explicitly stated that its decision was based on other factors. Finally, the sentence was not manifestly excessive because of the gravity of the Appellant's actions and his disregard for human life. For these reasons, the Appellant's claims should be dismissed.

By the Court,

Glynnis D. Hill, Judge

# PROOF OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the following persons on the 17th day of August, 2017.


Issa Benoit
HW9901
SCI Houtzdale
P.O. Box 1000
209 Institution Drive
Houtzdale, PA 16698-1000


John Cotter, Esquire
2541 S. Broad St.
Philadelphia, PA 19148-4309


Hugh J. Burns, Esquire
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107


_8/17/17_
**DATE**

16