J-S50034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| HANNAH MATOS | |
| Appellee | No. 1608 MDA 2015 |

Appeal from the Judgment of Sentence August 6, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001140-2014

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED JULY 06, 2016**

Appellant, the Commonwealth of Pennsylvania, appeals from the August 6, 2015 aggregate judgment of sentence of 11½ to 23½ months' incarceration, imposed by the trial court after a jury convicted Appellee, Hannah Matos, of two counts of aggravated assault, and one count of simple assault.[1]  After careful review, we affirm.

Our review of the certified record reveals that the victim, Lafone Brown, testified to dating Appellee, but ultimately ending the relationship. N.T., 6/25/15, at 45-49.  On June 12, 2014, the victim agreed to meet

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and (4), 2701(a)(1), and 2709(a).

Appellee at her home to exchange some vacation photographs. *Id.* at 51-52. When the victim clarified that he wanted the relationship to end, Appellee became upset and began threatening suicide, and ultimately left the victim at the home overnight with her 10 year-old son. *Id.* at 52-55. Appellee returned the next morning and confronted the victim when he attempted to leave. *Id.* at 56-58. Appellee followed the victim and hit him with a belt. *Id.* at 62-63. Then Appellee "pulled a hammer from behind her back" and "swung it at [the victim] multiple times … hitting [him] once in the arm." *Id.* at 63-64. The victim "was able … to [get] the hammer" from Appellee. *Id.* at 65. He then "started jogging away." *Id.* The victim "thought [he] was clear" when he saw Appellee in her vehicle driving toward him. *Id.* at 68. The victim resumed jogging away from Appellee. *Id.* at 70. The victim noticed Appellee had a second hammer. *Id.* at 72.[2] Appellee began driving after the victim, who jumped over a fence. *Id.* at 75. The victim then saw a sign that said "leasing office," and he entered the building and called the police. *Id.* at 79.

_____

[2] The victim said it was not the same hammer, and he "remembered thinking, like, who has two hammers[?]" *Id.* at 72.

Relative to the June 13, 2014 incident, Appellee was charged with the aforementioned offenses and appeared for a jury trial on June 25, 2015.[3] After the verdicts were rendered, the trial court deferred sentencing to August 6, 2015, when it sentenced Appellee to 11½ to 23½ months' incarceration at Count 1, aggravated assault; 5 years' consecutive probation at Count 2, aggravated assault; with Counts 5 and 6, simple assault and harassment, merging. N.T., 8/6/15, at 5-8. On August 7, 2015, the Commonwealth filed a motion to modify sentence, and, after hearing argument, the trial court entered an order on September 3, 2015, denying the motion. The Commonwealth filed a timely notice of appeal on September 16, 2015.[4]

On appeal, the Commonwealth presents two sentencing issues for our review.

> 1. Did the Sentencing Court err by refusing to apply the Deadly Weapons Enhancement even though the jury made a specific finding that [Matos] utilized a deadly weapon in the commission of her crimes?
>
> 2. Did the Sentencing Court impose an unreasonably lenient sentence?

---

[3] Appellee was also charged with terroristic threats, stalking and harassment. The jury acquitted Appellee of terroristic threats and stalking, while the trial court found Appellee guilty of harassment.

[4] The Commonwealth and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Commonwealth's Brief at 5.

At the outset, we note that both of the Commonwealth's issues pertain to the discretionary aspects of Appellee's sentence. "There is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Tobin*, 89 A.3d 663, 666 (Pa. Super. 2014) (citation omitted). When an appellant forwards an argument pertaining to the discretionary aspects of the sentence, this Court considers such an argument to be a petition for permission to appeal. *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014) (*en banc*) (citation omitted), *appeal denied*, 104 A.3d 1 (Pa. 2014). "[A]n [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code." *Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted).

Prior to reaching the merits of a discretionary aspects of sentencing issue, this Court is required to conduct a four-part analysis to determine whether a petition for permission to appeal should be granted. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1039 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). Specifically, we must determine the following.

> (1) [W]hether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P.

[720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa.C.S.A.] § 9781(b).

*Id.*

Instantly, the Commonwealth filed a timely motion for modification of sentence and notice of appeal. Also, the Commonwealth has included a Rule 2119(f) statement in its brief. Commonwealth's Brief at 17. We therefore proceed to determine whether the Commonwealth has raised a substantial question for our review.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Edwards*, 71 A.3d 323, 330 (Pa. Super. 2013) (citations omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citations omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012).

In this case, the Commonwealth advances two sentencing issues: first, that the trial court abused its discretion when it "ignored the [d]eadly

[w]eapon [e]nhancement," and second, that the trial court sentenced Appellee to "an excessively lenient sentence." Pa.R.A.P. 2119(f) Statement, Commonwealth's Brief at 18. Relative to the Commonwealth's first issue asserting the trial court's failure to apply the deadly weapon enhancement at sentencing, "our case law has established that application of the deadly weapons enhancement presents a substantial question." ***Commonwealth v. Raybuck***, 915 A.2d 125, 127 (Pa. Super. 2006) (internal citations omitted). Likewise, with regard to the Commonwealth's second issue that the trial court imposed an "unreasonably lenient" sentence, such claim raises a substantial question. ***Commonwealth v. Childs***, 664 A.2d 994, 996 (Pa. Super. 1995) (stating that the Commonwealth's claim that the sentence imposed was excessively lenient presented a substantial question), *appeal denied*, 674 A.2d 1066 (Pa. 1996). Based on the foregoing, we will address the merits of the Commonwealth's two issues.

The Commonwealth first contends that the trial court erred when it "ignore[d] the jury's specific finding"[5] and failed to apply the deadly weapon enhancement to Appellee's sentence. Commonwealth's Brief at 25.

_____

[5] The Commonwealth states that "the jury decided that [Appellee] had used a weapon capable of causing death or serious bodily injury when the jury found her guilty of [aggravated assault pursuant to 18 Pa.C.S.A. § 2702(a)(4)]." Commonwealth's Brief at 23. The Commonwealth concedes, however, that "the jury did not indicate whether the SUV or the hammer was the deadly weapon." ***Id.*** at n.4. Significantly, as noted below, the sentencing code precludes the application of the deadly weapon enhancement to a conviction under § 2702(a)(4).

Preliminary, we note that the United States Supreme Court decision of *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013), holding that "facts that increase mandatory minimum sentences must be submitted to the jury … and found beyond a reasonable doubt," does not apply to this case. In *Commonwealth v. Ali*, we observed that *Alleyne* "has no application to [] sentencing enhancements [because] [t]he parameters of *Alleyne* are limited to the imposition of mandatory minimum sentences." *Commonwealth v. Ali*, 112 A.3d 1210, 1225-1226 (Pa. Super. 2015), *appeal granted in part,* 127 A.3d 1286 (Pa. 2015). We further recognize that the sentencing code prohibits application of the deadly weapon enhancement to an aggravated assault conviction under 18 Pa.C.S. § 2702(a)(4) ("[t]here shall be no Deadly Weapon Enhancement for … (vi) Aggravated Assault (18 Pa.C.S. § 2702(a)(4)"), such that the trial court could not have applied the deadly weapon enhancement to Appellee's conviction at Count 2. 204 Pa. Code § 303.10.

In support of its argument that the enhancement should apply, the Commonwealth cites *Buterbaugh*, *supra*, as "analogous to the case at hand." Commonwealth's Brief at 21. We recognize, as did our *en banc* Court in *Buterbaugh*, the relevant statutory provision as follows.

> (a) *Deadly Weapon Enhancement*.
>
> (1) **When the court determines** that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the

DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i)     Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii)    Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii)   Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.

(2)  **When the court determines** that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:

(i)     Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or

(ii)    Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

(iii)   Any device, implement, or instrumentality capable of producing death or serious bodily injury.

204 Pa. Code § 303.10 (emphasis added).

In **Buterbaugh**, we affirmed the trial court's application of the deadly weapon enhancement to the appellant/defendant's sentence, where the trial

court "determined that Appellant's truck was a deadly weapon for purposes of the [deadly weapon enhancement]." ***Id.*** at 1267. The foregoing statutory language is critical to our review. As quoted above, the deadly weapon enhancement statute states clearly that "**the court determines**" whether a deadly weapon was possessed or used. 204 Pa. Code § 303.10(a). In the present case, the trial court expressly determined that the deadly weapon enhancement did not apply. The trial court explained as follows.

> The deadly weapon enhancement provision of the sentencing guidelines provides that when the [trial] court determines that the defendant possessed a deadly weapon during the commission of a criminal offense, the court must add at least 12 months and up to 24 months to the guideline sentence that would otherwise have been applicable. See 204 Pa. Code § 303.4. … Devices, implements, and instrumentalities not designed to inflict harm can become deadly weapons by the manner in which they are used. ***Commonwealth v. Rhoades***, 8 A.3d 912, 917 (Pa. Super. 2010). For a deadly weapon finding to apply, such an item must be "capable of producing death or serious bodily injury." 204 Pa. Code § 303.10(a)(2)(iii).
>
> …
>
> [T]he [trial c]ourt properly found that [Appellee's] use of a hammer to hit the victim once in the arm did not cause the hammer to be used in a way capable of producing serious bodily injury and [Appellee's] use of her motor vehicle did not rise to the level of using a deadly weapon.

Trial Court Opinion, 9/3/15, at 2-3 (emphasis added).

Given the trial court's reasoning and statutory role as the determiner pursuant to 204 Pa. Code § 303, we are not persuaded by the Commonwealth's argument that the trial court erred by failing to apply the deadly weapon enhancement in sentencing Appellee.

In its second issue, the Commonwealth argues that the trial court erred in sentencing Appellee "to an unreasonably lenient sentence for her crimes by sentencing her to the low end of the standard-range sentence on Count One and to a mitigated sentence on Count Two." Commonwealth's Brief at 31. In reviewing this claim, we recognize that we may vacate a sentence only when "the sentencing court sentenced outside the guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). There are four statutory factors we must consider in reviewing the certified record. They are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the opportunity of the sentencing court to observe the defendant, including any presentence investigation, (3) the findings upon which the sentence was based, and (4) the guidelines promulgated by the commission. *Id.* § 9871(d)(1)-(4). Further, our Supreme Court has explained as follows.

> [T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." In

- 10 -

more expansive terms, … "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

*Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citations and footnote omitted). "[W]hat makes a sentence 'unreasonable' is not defined in the statute. Generally speaking, 'unreasonable' commonly connotes a decision that is 'irrational' or 'not guided by sound judgment.'" *Id.* at 963. Further, the sentencing court is permitted to deviate from the sentencing guidelines so long as the court places on the record its reasons for the deviation. 42 Pa.C.S.A. § 9721(b). "Although the sentencing court is required to consider and consult the Sentencing Guidelines when imposing a sentence, it retains the discretion to sentence below the mitigated range as long as it clearly explains the reasons for doing so. If the sentence imposed is outside of the recommended guidelines, the trial court must provide a contemporaneous written statement of the reason or reasons for the deviation or it must state on the record in the presence of the defendant the reasons for the sentence." *Commonwealth v. Childs*, 664 A.2d 994, 996 (Pa. Super. 1995).

Instantly, upon review, we do not find that the trial court's sentence was an abuse of discretion or unreasonable. The trial court rendered its sentence, on the record, as follows.

The [trial c]ourt will base the following sentence on the minimum amount of confinement imposed consistent with the protection of the public, the

gravity of the offense, [and] the rehabilitative needs of [Appellee]. The [trial c]ourt has relied on the presentence report, incorporates [it] into the record [in the] reasons for the sentence, as well as additional submitted material [including letters supporting Appellee]. The [trial c]ourt had a chance to review statements by both counsel. And the [trial c]ourt did review the sentencing memorandum provided by the Commonwealth.

The [trial c]ourt has considered the circumstances of the offense[s], it did sit through the trial, and also [Appellee's] circumstances, character, education, the fact that she is a mother of a small, younger child, and has looked to the sentencing code and guidelines. The [trial c]ourt having sat through the trial and having heard everything, and, having learned about [Appellee] finds that … she obviously, under the sentencing guidelines, needs the incarceration, but the [trial c]ourt will go into the mitigated range and sentence [her at Count One, aggravated assault, to 11½ to 23½ months' incarceration].

…

[At Count Two, aggravated assault, to a consecutive five years' probation. Count Five, simple assault, and Count Six, harassment, merge.]

N.T., 8/6/15, at 4-6, 8.

The trial court further commented as follows.

[Appellee], I sat through your trial. Your charges are serious. I have made a decision that, you know, with what you have going on in life, that you have the possibility that state prison wasn't going to be the right place for you, that you should have a chance to be with your family. You have issues that you need to work on, and I'm hoping that you have a chance to do that during this time period and that you can get out and get on with your life and get back to your son and move on from there.

- 12 -

> And that was one of the main reasons for this sentence.

*Id.* at 9.

In addition to being familiar with the facts of the case, the trial court was well-aware of the Commonwealth's position regarding sentencing. After hearing from the Commonwealth on August 6, 2015 and imposing Appellee's sentence, and then reviewing the Commonwealth's subsequent motion to modify sentence, the trial court convened oral argument on August 31, 2015, and at the conclusion of argument stated, "All right. I'll take a look at it and I will have a decision. Thank you." N.T., 8/31/15, at 13. The trial court thereafter denied the Commonwealth's motion to modify sentence.

Given the record before us as detailed above, we find no abuse of the trial court's discretion in rendering Appellee's sentence. Accordingly, we affirm the August 6, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2016