J-S14045-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　:　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
BETINA D. MIXON　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　Appellant　　　　　　　　:　No. 1465 MDA 2020

Appeal from the Judgment of Sentence Entered September 29, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000737-2019

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:　　　　　　　**FILED JUNE 15, 2021**

Betina D. Mixon ("Mixon") appeals from the judgment of sentence entered following her convictions of two counts of aggravated assault, and one count each of simple assault, reckless endangerment, and harassment.[1]  We affirm.

During the night of December 31, 2018, through the early morning hours of January 1, 2019, Mixon attended a party at a home in the city of Reading, Berks County.  While at the party, Mixon encountered the victim, Nakeya Williams ("Williams").  Mixon told Williams that she wanted to fight her.  Williams eventually agreed, and the two fought each other in the backyard of the residence.  Williams did not identify Mixon as having a weapon during the initial fight.  After the initial fight had concluded, Williams went to

_____

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), (4); 2701(a)(1); 2705; 2709(a)(1).

a bathroom inside the home to clean herself. As she was cleaning herself, Williams saw Mixon running towards her, and believed Mixon wanted to continue the fight. As Mixon engaged with Williams a second time, Williams could feel something poking her. Williams discovered that she was bleeding, and saw Mixon holding an unidentified object in her hand.

After the second fight, Williams realized that she had sustained a deep cut to her thumb. Mixon offered to take Williams to the hospital. However, Williams declined and asked for an ambulance. An ambulance transported Williams to Reading Hospital. In total, Williams suffered the laceration to her thumb, a puncture wound to her neck, lacerations to her left arm, and various scratches and bruises on her body. Her thumb injury required surgery, which included nerve repair by an orthopedic surgeon.

Based on Williams's identification, police charged Mixon with, *inter alia*, the above-referenced offenses. Mixon proceeded to a jury trial on September 28, 2020. At trial, the jury heard testimony from Williams, Officer William Pletcher ("Officer Pletcher") of the Reading Police Department, who investigated the assault; and Leonard D'Addesi, M.D. ("Dr. D'Addesi"), who treated, and performed surgery, on Williams.[2]

---

[2] At trial, Dr. D'Addesi was qualified, by stipulation of the parties, as an expert witness.

At the conclusion of trial, the jury found Mixon guilty of the above-referenced offenses.[3] The next day, the trial court sentenced Mixon to a term of 78-156 months in prison for the aggravated assault conviction under section 2702(a)(1), and 21 months to 5 years in prison for the aggravated assault conviction under section 2702(a)(4), to be served concurrently.[4] The remaining convictions merged for the purposes of sentencing.

Mixon filed a timely post-sentence Motion, challenging the trial court's finding that Williams had suffered a serious bodily injury, the trial court's failure to merge the two aggravated assault convictions, and the trial court's failure to state the sentencing guidelines. On October 6, 2020, the trial court denied Mixon's post-sentence Motion. Mixon filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

Mixon raises the following issues for our review:

1. Whether the trial court erred and abused its discretion by overruling the defense objection to the testimony … regarding whether or not the injury to [Williams]'s thumb could have been inflicted by a "finger nail or a tooth … or something like that?"

2. Whether the trial court erred and abused its discretion in denying the Motion for Judgment of Acquittal to Count [T]wo[,] where the evidence was insufficient to support the element of a deadly weapon?

---

[3] The trial court convicted Mixon of one summary count of harassment.

[4] At the conclusion of trial, the trial court indicated that it had already prepared a pre-sentence investigation report, and that sentencing would be held the next day. N.T., 9/28/20, at 129.

3. Whether the trial court erred and abused its discretion by denying the post-sentence [M]otion to vacate sentence based on the underlying finding of a factual element, Serious Bodily Injury, and by indicating that Counts [O]ne and [T]wo of the Information do not necessarily merge, and by not indicating what particular guidelines were being employed in tendering the sentences?

4. Whether the trial court erred and abused its discretion in denying the post-sentence [M]otion to vacate the judgment of sentence based on the claim that the verdict was against the weight of the evidence?

Brief for Appellant at 5.

In her first issue, Mixon argues that the trial court abused its discretion when it overruled her objection to Dr. D'Addesi's testimony. *Id.* at 15-18. Mixon argues that Dr. D'Addesi's testimony opining that Williams's injuries were caused by an object, rather than a bite or scratch, was mere speculation, and that Dr. D'Addesi could not conclude with a reasonable degree of medical certainty that Williams's injuries were caused by a sharp object. *Id.* at 17-18. Mixon claims that the trial court's error constituted prejudice, as she would not have been convicted of count two, aggravated assault, without Dr. D'Addesi's testimony. *Id.* at 18.

> [T]he admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice.

*Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citation omitted).

Pennsylvania Rule of Evidence 702 provides as follows:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or otherwise specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702(a)-(c).

Here, the parties stipulated to Dr. D'Addesi's qualification as an expert witness. N.T., 9/28/20, at 67-68. Dr. D'Addesi testified that he was an orthopedic surgeon, who specialized in hand and upper extremity surgery, and personally had examined Williams in the emergency room. *Id.* at 68-70. Dr. D'Addesi determined that Williams's thumb injury required surgery, which he performed on Williams. *Id.* at 70-74. When asked whether Williams's injuries could have been caused by a fingernail or a tooth, Dr. Williams testified over objection that, while a fingernail or tooth could cause the injuries suffered by Williams, it was his opinion that Williams's injuries were caused by "a very sharp object," because the cuts were straight, rather than jagged, and the skin was not torn apart as he would expect from a bite. *Id.* at 78.

Our review of the record confirms that the trial court did not abuse its discretion in admitting Dr. D'Addesi's testimony. Dr. D'Addesi testified

regarding his direct observation and treatment of Williams, offered his opinion as an orthopedic surgeon specializing in hand surgery, and testified regarding his opinion to a reasonable degree of medical certainty. *See Huggins*, *supra*; *see also* Trial Court Opinion, 1/5/21, at 15-16 (wherein the trial court explains its rationale for denying Mixon's objection at trial). Accordingly, we cannot grant Mixon relief on this claim.

In her second issue, Mixon argues that the evidence was insufficient to sustain her aggravated assault conviction under section 2702(a)(4), as the Commonwealth failed to prove that Mixon used a deadly weapon. Brief for Appellant at 18-19. Mixon asserts that the only evidence presented at trial to support the contention that Mixon used a deadly weapon was the testimony of Dr. D'Addesi, which Mixon again asserts was speculative. *Id.* at 19.

> The standard we apply in reviewing the sufficiency of the evidence is[,] whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

J-S14045-21

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

"A person is guilty of aggravated assault if [s]he ... attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4); *see also id.* § 2301 (defining "bodily injury" as "[i]mpairment of physical condition or substantial pain," and "deadly weapon" as, in part, "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.").

At trial, Williams testified that as she was cleaning up in the bathroom after the first fight, she saw Mixon run towards Williams and swinging her arms in Williams' direction. N.T., 9/28/20, at 30-31. Williams testified that she "felt something poking [her,] but [she] felt the adrenaline [and] it wasn't really hurting but then [she] seen [*sic*] blood and then [she] seen [*sic*] what [Mixon] had in her hand and [she] was trying to hold it away from [her]." *Id.* at 31-32. Williams testified that while she couldn't identify the weapon, she "knew it was a weapon that [Mixon] had in her hand that [Williams] was holding away from [her]." *Id.* at 32. Additionally, Dr. D'Addasi testified as to his opinion that Williams's thumb injuries were caused by "a very sharp object," rather than a fingernail or bite, and that Williams's neck injury, which he described as a puncture wound, may have been caused by an object that was sharp on one end. *Id.* at 78. Dr. D'Addesi also testified that Williams

- 7 -

sustained a serious bodily injury to her thumb, and a serious bodily injury, creating a substantial risk of death, to her neck. *Id.* at 79-80. Accordingly, viewed in the light most favorable to the Commonwealth, sufficient evidence was presented at trial to support Mixon's aggravated assault conviction. *See Commonwealth v. Walls*, 950 A.2d 1028, 1032 (Pa. Super. 2008) (upholding a conviction for aggravated assault when the evidence showed that the appellant repeatedly stabbed the victim, causing cuts, scratches, and lacerations to the victim's upper torso).

In her third issue, Mixon raises two distinct challenges, which we will address separately. First, Mixon argues that the trial court failed to indicate which sentencing guidelines it used when imposing Mixon's sentence. Brief for Appellant at 22. Mixon asserts that the trial court failed to indicate whether it applied the guidelines for deadly weapon possessed, deadly weapon used, or neither. *Id.* Though Mixon concedes that the trial court's sentence fell within the standard range for each guideline, she nevertheless asserts that the trial court should have specified whether it applied one of the enhanced guidelines. *Id.*

Mixon's claims challenge the discretionary aspects of her sentence. "Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Moury*, 992 A.2d 1662, 170 (Pa. Super. 2010). Prior to reaching the merits of a discretionary sentencing issue,

[this Court conducts] a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

\* \* \*

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Moury***, 992 A.2d at 170 (quotation marks and some citations omitted).

Here, Mixon filed a timely Notice of Appeal, preserved her challenge in her post-sentence Motion, and included a separate Pa.R.A.P. 2119(f) Statement in her appellate brief. ***See*** Brief for Appellant at 6. Finally, Mixon's claim that the trial court failed to properly explain whether it used one of the deadly weapon sentencing enhancements under the sentencing guidelines presents a substantial question. ***See Commonwealth v. Raybuck***, 915 A.2d 125, 127 (Pa. Super. 2006).

We adhere to the following standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Robinson***, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

At Mixon's sentencing hearing, the Commonwealth made the trial court aware of the deadly weapon enhancements applicable to Mixon's aggravated assault – deadly weapon conviction, and the Commonwealth recommended that the trial court apply the enhancement for deadly weapon used. ***See*** N.T., 9/29/20, at 4-5 (wherein the Commonwealth states that the standard range sentence is 60-78 months; the deadly weapon possessed enhancement would be 69-87 months; and the deadly weapon used enhancement would be 78-96 months).

In its Opinion, the trial court stated that it "specifically did not employ any deadly weapon enhancement, and the record demonstrates as such, and the imposed sentence was within the sentencing guidelines." Trial Court Opinion, 1/5/21, at 13. The trial court's statement is supported in the record.

At sentencing, the trial court stated the following:

The fact remains that it is fortunate that [*sic*] [Mixon] that the outcome of all of this was such that [Mixon] did not face more serious charges because a death could have certainly occurred especially with regard to the wound to the neck[,] because there is so much in that vicinity of the neck that could go wrong and easily could have resulted in the permanent injury to [Williams] or her death.

I've taken into account the circumstances that surround the entire incident, and I recognize the role that was likely played here by hours[-]long consumption of liquor and all of the things that surround that. It is clear under our law, however, that that constitutes no excuse or defense and displays[,] to some extent[,] a recklessness in and of itself.

- 10 -

I have taken into account also the provisions of the [S]entencing [C]ode[,] which requires me to take into account an exclusive list of factors that go into making the ultimate decision here. One of those factors is the rehabilitative needs of [Mixon].

I note that [Mixon] really has a very scant history of imprisonment. In fact, it appears clear that by far the most or the longest one was a result of the parole violation in 2011 which resulted in a sentence of 12 to 60 months. And I have also taken into account the seriousness of the offense and the question of diminishing the significance and seriousness of the offense in the views of the public. That's another factor that we have to consider.

So for all of these, and I want to say this also, I have taken into account the sentencing guidelines[,] including I have taken into account the alternative offense gravity score distinguishing between serious bodily injury caused and serious bodily injury attempt. There was an overlap of those two things.

I agree with counsel for the Commonwealth that based on the evidence and the expert opinion that serious bodily injury was caused here. It is impossible, of course, for me to discern whether the jury found [Mixon] guilty on the basis of serious bodily injury caused or serious bodily injury attempted. I don't think that that's a critical factor because the statute is the statute. But, nevertheless, I observed that that could be the case here.

For all of these reasons I'm going to impose sentence as follows: at … Count 1, [Mixon] is committed for not less than 78 nor more than 156 months to the Bureau of Corrections.

N.T., 9/29/20, at 8-9.

Accordingly, the record contains no evidence that the trial court applied

either deadly weapon enhancement when imposing Mixon's standard-range sentence for aggravated assault.[5] *Id.* Rather, the trial court considered the nature and circumstances of the offense, Mixon's history, the role of alcohol in Mixon's crimes, the sentencing code and guidelines, and Mixon's rehabilitative needs. *See id.* As set forth above, the trial court took into account whether Mixon *caused* serious bodily injury, rather than whether Mixon had used a deadly weapon. *Id.* Further, we note that the trial court had the benefit of a presentence investigation report. *Id.* at 7. Accordingly, we discern no abuse of discretion in the trial court's sentence for Mixon's aggravated assault conviction. *See Commonwealth v. Corley*, 31 A.3d 293, 298 (Pa. Super. 2011) (stating that "where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive.").

Next, Mixon argues that the trial court erred by failing to merge her two convictions for aggravated assault for sentencing purposes. Brief for Appellant at 23-24. Mixon asserts that because the two aggravated assault convictions are part of the same statute, they should have merged for sentencing even if the elements differed. *Id.* at 23. Mixon claims that the Commonwealth's

---

[5] The record reveals that Mixon had a prior record score of 4, and the offense gravity score was 11, considering that serious bodily injury had been demonstrated. N.T., 9/29/20, at 4. The standard range for the aggravated assault conviction at section 2702(a)(1) was 60-78 months, plus or minus twelve months. Mixon's counsel agreed to the Commonwealth's calculation of the sentencing guideline ranges. *Id.* at 5.

theory of the case was similar enough for each count that merger was appropriate. *Id.* at 24.

"Whether [Mixon]'s convictions merge for sentencing is a question implicating the legality of [Mixon]'s sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009).

Pennsylvania's merger doctrine is codified at 42 Pa.C.S.A. § 9765, which provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S.A. § 9765.

This Court has held that aggravated assault at sections 2702(a)(1) and 2702(a)(4) do not merge for sentencing purposes, as they do not share identical statutory elements, and that it is possible to prove a violation of section 2702(a)(1) without necessarily proving a violation of section 2702(a)(4). ***See Commonwealth v. Rhoades***, 8 A.3d 912, 918 (Pa. Super. 2010) (quotation omitted).

In this case, Mixon was convicted of one count each under sections 2702(a)(1) and 2702(a)(4) the aggravated assault statute. N.T., 9/28/20, at 125. Therefore, as Mixon's assault convictions contain disparate elements,

the trial court did not err in failing to merge Mixon's two aggravated assault convictions for sentencing purposes. *See Rhoades*, *supra*.[6]

In Mixon's fourth issue, she argues that her verdicts were against the weight of the evidence. Brief for Appellant at 24-25. Mixon asserts that the Commonwealth's evidence was "threadbare," and is outweighed by Williams's intoxication on the night of the assault, Williams's prior criminal history, and the fact that the assault started as mutual combat between the two women. *Id.* at 25.

> The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the fact, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

---

[6] We note that, because the trial court sentenced Mixon to serve concurrent sentences for her two aggravated assault convictions, merging her convictions at sentencing would not have disturbed the trial court's overall sentencing scheme.

In its Opinion, the trial court addressed Mixon's challenge to the weight of the evidence as follows:

> At trial, the Commonwealth called [Williams,] who detailed the events leading up to the bathroom assault and testified that she felt [Mixon] stabbing her, though she couldn't see the actual weapon. [Williams] then described the injuries she sustained as a result of the assault, including a serious laceration to her thumb and cuts to her arm. Officer Pletcher recounted responding to the emergency call on the night of the assault, observing [Williams]'s injuries, and then taking photographs of those injuries. Officer Pletcher asked [Williams] about the identity of the perpetrator of the assault, [and Williams] could only provide the first name of Betina. However, when [Officer Pletcher] later met with [Williams] again, she was able to provide more details leading to identification of [Mixon]. Finally, the Commonwealth presented expert testimony from Dr. D'Addesi, who observed and operated on [Williams]'s injuries. Dr. D'Addesi described the operating procedure used to repair [Williams]'s thumb and the recuperation process afterward, including any scarring that would be left as a result. Finally, Dr. D'Addesi opined that the injury to [Williams]'s thumb constituted a serious bodily injury and that the injury to [Williams]'s neck was of a nature that it created a substantial risk of death. We are unconvinced by [Mixon]'s argument that the evidence was too imprecise for a reasonable fact finder to render a guilty verdict.
>
> Moreover, the jury was free to afford the weight and credibility it saw fit to the testimony and evidence presented at trial. It is clear from the verdicts rendered, that the jury found [Williams]'s testimony credible. Likewise, the jury afforded weight to the testimony of Dr. D'Addesi. We find nothing in the jury's verdict that shocks the conscience of this court or that is so contrary to the evidence as to characterize a miscarriage of justice.

Trial Court Opinion, 1/5/21, at 15.

Our review of the record confirms that the trial court did not abuse its discretion when it concluded that the jury's verdict was not against the weight

of the evidence.  **See *Gonzalez***, **supra**.  Accordingly, we can grant Mixon no

relief on this claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/15/2021